THE STATE, THE WEST JERSEY TRACTION COMPANY, PROSECUTORS, v. THE BOARD OF PUBLIC WORKS OF THE CITY OF CAMDEN ET AL., DEFENDANTS.

A paper certified by the secretary of state, under his seal, to be a true copy of a description of routes of a trolley line, filed in his office, is not evidence.

———

Three writs of *certiorari* bring up three ordinances of the board of public works of the city of Camden, passed on May 3d, 1894. Each of these ordinances purports to grant to the Camden Horse Car Railroad Company permission to construct its road in certain streets within the city of Camden.

Argued at June Term, 1894, before Justices DIXON, ABBETT and REED.

For the prosecutors, *Thomas E. French* and *Samuel H. Grey.*

For the defendants, *Edward A. Armstrong, David J. Pancoast* and *Thomas N. McCarter.*

The opinion of the court was delivered by

REED, J. This case is a supplement to the case under the same title, reported in 27 *Vroom* 431. To avoid useless repetition of facts, reference is made to the statement of the charter rights of the Camden Horse Car Railroad Company as set out in the preceding case, as well as to the posture of the West Jersey Traction Company in respect to the former company, also set out in full in the same case.

In that case, the former company, organized under a special charter, had been granted consent to occupy certain streets, and the latter company, organized under the general act of 1893 (*Pamph. L., p.* 302), wishing to occupy some of the same streets, attacked the ordinance granting permission to its rival.

The ordinance was set aside on the ground that it was a judicial act, and that it had been passed without notice and by the vote of an interested member of the board.

The present case brings up three ordinances, designed to do what the other ordinance failed to do, namely, to grant the consent of the board to the same company in a legal way.

The traction company, which successfully attacked the preceding ordinance, is again attacking the present ordinance.

In this, as in that case, the counsel for the Camden Horse-Car Railroad Company challenge the right of the West Jersey Traction Company to prosecute the writs of *certiorari*.

It was held in that case that it appeared in evidence that the traction company had become duly incorporated under the act of 1893, and had filed a description of its route running over the said streets, in the office of the secretary of state; also, that it had already filed its petition requesting permission to lay its tracks in the said streets at the time when the ordinance was passed giving consent to the other company. These facts were regarded as giving the traction company a special interest in the streets, sufficient to entitle it to test the validity of that ordinance.

It is thus perceived that the material facts appearing in that case to support the standing of the traction company as prosecutors, were that the traction company had filed a description of its route in the office of the secretary of state, and that such route included some of the streets also covered by the questioned ordinance. Unless those facts were proven it is entirely clear that the traction company had no apparent special interest in the matter to be affected by the ordinance.

The right of the traction company to stand as prosecutor of the present writ is put and must stand upon the same facts.

Now, the evidence of the fact that it had filed in the office of the secretary of state a description of its routes, and the evidence of the contents of that description offered in the present case, consists of a copy of a description of routes, which copy is certified by the secretary of state as a true copy

on file in his office. Within this certificate was also a statement that maps had been filed.

In the former case, a similar certificate was offered to prove the same facts, and went in evidence without objection. In the present case, however, the certified copy of the description of routes is distinctly objected to as being insufficient to prove the filing and facts therein stated.

We are directly confronted with the question whether this copy is evidence of the existence of the paper filed and of its contents.

The rule laid down by Mr. Taylor is that, whenever a book is of such a public nature as to be admissible in evidence on its mere production from the proper custody, its contents may be proved by an authentic copy. *Tayl. Ev.* 1508.

The same rule which has been adopted in the case of judicial documents appears to be generally applicable to public writings not judicial which cannot be removed on the ground of inconvenience to the public service, namely, that whenever an original would be admissible, an examined copy will equally be admitted. 2 *Phil. Ev.* 144.

Assuming that the description of routes and map which is required to be filed in the office of the secretary of state becomes a public document, provable by an authentic copy, is the copy offered competent evidence?

There is a difference in the methods by which judicial records and by which public records are provable. Judicial records are provable by exemplified copies. An exemplified copy at common law was obtained by removing the record into the Court of Chancery by *certiorari*. The great seal was attached to a copy, which was transmitted by a *mittimus* to the court in which it was to be used as evidence.

In this country, says Professor Greenleaf, the great seal being usually if not always kept by the secretary of state, a different course prevails; and an exemplified copy under the seal of the court is usually admitted, even upon a plea of *nul tiel record*, as sufficient evidence. *Greenl. Ev.*, § 502.

In addition to copies exemplified by the great seal, or seal of a court, there were certified copies made by the officer in custody of the judicial records, and known as office copies. These were admissible only in the same cause and in the same court.    2 *Phil. Ev., marg. p.* 347.

The third kind of authenticated copy is an examined or sworn copy, which is proved by producing a witness who has compared the copy with the original record, word for word, or who has examined the copy while another person read the original.

These are the various methods of proving judicial records by a copy.    Therefore, a paper certified by the secretary of state, under the appropriate seal, as clerk of the Court of Errors and Appeals, or of the Court of Impeachment, or of the Prerogative Court, to be a true copy of a record in one of these courts, would be receivable in evidence.

In respect to public documents or entries not of a judicial character, proof may be made by examined or sworn copies, as already remarked.    *State* v. *Hutchinson,* 5 *Halst.* 242; *State* v. *Clothier,* 1 *Vroom* 351.

But a paper purporting to be a certified copy of a public document, although certified by the officer in whose custody it is placed, whether under seal or not, is not receivable in evidence unless such certification is enjoined or permitted by statute.    *Notes to* 2 *Phil. Ev.* (5*th Am. ed.*), *marg. p.* 444; 1 *Stark. Ev.* 154.

It is true that Mr. Greenleaf, in the text of the original edition of his work on evidence, section 485, says that the weight of authority seems to have established the rule that a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence.

Of two cases cited by him in one the copy received was a sworn copy, and in the other the copy was rejected because it certified facts and not the record; and the remarks of the judge in respect to the efficacy of the certified copy as evidence were *obiter*.

Two or three other cases are cited which were based upon the remarks of Chief Justice Marshall in the case of *United States* v. *Percheman,* 7 *Pet.* 51, who, after holding that the copy then in question was authorized by federal statutes, said that on general principles such copies ought to be received.

In the last edition of Mr. Greenleaf's work it is admitted that the earlier cases were opposed to the reception of certified copies unless authorized by statute.

It is profitless to consider the question of the weight of American authorities, for it is believed that no English case can be found in which such certificates have been received, and their incompetency has been asserted in at least two cases in this state. It was so held by Judge Dayton in the case of *New Jersey Railroad and Transportation Co.* v. *Suydam,* 2 *Harr.* 25, 61. This was reaffirmed in the case of *The State* v. *David Cake et al.,* 4 *Zab.* 516.

The existence of this general rule of evidence accounts for and is evidenced by the number of special statutes empowering officers to certify copies of papers which are enrolled or on file in their offices. Thus, the secretary of state is by the legislature empowered and enjoined to give copies of bills and joint resolutions on file in his office, which copies, when certified under his hand and seal to be true copies, are to be receivable in evidence. *Rev., p.* 1094, § 7.

So certified copies of contracts of sale, of leases, or franchises of corporations recorded in his office, are to be received as evidence. *Rev., p.* 1096, § 15.

My inquiries have brought to light no statute which commands or authorizes copies of this class of filed papers to be made by the secretary of state, so the conclusion is that proof of the facts which were essential to give the prosecutors a footing as such, are here absent.

The writ is dismissed.