MATTIE STOUT, DEFENDANT IN ERROR, v. EDISON PORT-LAND CEMENT COMPANY, PLAINTIFF IN ERROR.

Submitted July 6, 1911—Decided December 8, 1911.

Where a witness testified from memory to the contents of the reports of the New Jersey State Geological Survey, and such reports were not produced or offered in evidence—*Held*, that the striking out of the witness' testimony in that regard was proper.

---

On error to Warren Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and VOORHEES.

For the plaintiff in error, *William H. Morrow* and *Robert H. McCarter.*

For the defendant in error, *William C. Gebhardt.*

The opinion of the court was delivered by

VOORHEES, J.   This writ of error to the Warren Circuit removes for review a judgment entered on the verdict of a jury for the plaintiff, originally for $2,090.23, and, subsequently, on rule to show cause, reserving exceptions, reduced to $1,550.

The suit was brought by the owner of a grist mill and the land whereon it is situate.   The declaration alleges that on April 2d, 1903, the plaintiff was the owner of the tract of land therein particularly described, and in the possession thereof, which lands contained a certain grist mill, and ought to have enjoyed the benefit and advantage of a stream of water running through the land to the mill for a supply of water to work the mill.

That the defendant diverted the supply by turning unnecessary and unreasonable quantities of water from the stream so that a sufficient supply for the mill did not run or flow to the same, whereby she could not follow up and exercise her trade and business in so large and beneficial manner as she otherwise would have done, but was deprived of the use and enjoyment of the mill and of the benefits, profits, gains and advantages.

Subsequently, this declaration was amended by adding a second count, substantially in the same form, except as to her damages, which are therein alleged as follows:   "Nor could not, during that time, rent the premises, but was deprived of the use, rents, issues and profits of the mill and premises and of all the benefits, gains, &c., which she otherwise might have made."

The contention is that the defendant had built a cement plant in 1902 upon the stream above the mill, and pumped the water from the creek by a large pump into a reservoir located on a hill some seventy feet above the creek, and thus abstracted so much water, beginning with the summer of 1902, that it became impossible to run the mill on a paying basis.   Up to

the time of abstraction of the water the mill is claimed to have been a successful and money-making business.

It is alleged that the diverting of the water was conclusively proven and admitted by the defendant, but that the defendant claimed to have returned nearly all the waters to the creek after making use of it above the plaintiff's mill. All the facts seem to be in dispute. At the time of the taking of the water the mill was rented for $360 a year.

The first assignment of error is to the refusal to charge the defendant's first request, that the damages, if any, to which the plaintiff may be entitled are such as have been shown to accrue between April 1st, 1905, and September 2d, 1909, the date of the commencement of the suit.

It appears that up to April 1st, 1903, one Grover was tenant of the mill property, and that on the last date, the plaintiff rented the mill to Harden for a term of two years, to April 1st, 1905, that Harden remained in possession only to July 1st, 1904, and then left. The insistence of the defendant is that the tenant was still under obligation to pay rent because there was no surrender of the lease by the plaintiff, and Harden being financially able to pay the rent, the damages, if any, recoverable against the defendant accrued only from the termination of the lease.

The court left it to the jury under the evidence to say when the damage commenced. This was proper, for it may be that there was a surrender of the lease in fact, by operation of law, by the acceptance of the possession of the premises by the plaintiff.

The property, as above stated, had been abandoned by the tenant in July, 1904, when the plaintiff's husband, John Stout, took charge, and in March, 1905, hired Painter as miller. The plaintiff's husband circulated letter-heads, bill-heads and other advertisements which were evidential that he individually was conducting the business until this suit was commenced, and there is other evidence from which it might be concluded that the plaintiff was not connected with the business.

She, however, says that her husband, during this period, was her agent. Although to the outward world, he may have been

personally conducting the mill, still that is not contrary to, or at variance with, the management of the business in his own name, but actually for the benefit of his wife and as her representative.

Hence, it was for the jury to say how the business was conducted from the abandonment of Harden, in 1904. There may have been a surrender by operation of law, the possession being taken by the plaintiff through her husband as her agent. The request, therefore, was properly refused.

The next assignment of error likewise rests upon a refusal to charge. At the conclusion of the case, the defendant requested the court to instruct the jury that "nominal damages only could be awarded, because the plaintiff by his evidence is bound to show to the jury some satisfactory basis" for the ascertainment of substantial damages. The defendant, in his argument of this request, admitted that if there was any evidence of substantial damages, the request must go for nothing.

There was testimony that there had been several applicants for the mill, who were not inclined to rent on account of the loss of water from which the jury might conclude that rentals at least had been lost. . It also appeared that merely by grinding grist five or six dollars a day could be earned, and that from October 1st to the holidays, the full capacity of the mill for grinding buckwheat alone would amount to $12 per day. In the fall of 1905, eight hours every day were lost for the want of water. There was evidence that before the diversion the capacity of plaintiff's mill was twenty-five barrels of wheat per twenty-four hours, but that after the diversion, there was not sufficient power to make it profitable.

But it is argued that this was not proof of loss, because evidence was lacking showing what volume of business could have been done. The court, in the charge, dealt with the question quite properly, by instructing the jury that damages must be compensation for what the plaintiff has lost in money value, and nothing more, that it was not sufficient to sustain a verdict for more than nominal damages to prove that the defendant had, at times, withheld the flow; if that proof stood alone, nothing but nominal damages could be given, that to obtain

actual damages the plaintiff must prove not only that the water was withheld, and that the power could not be used, but that at these periods her business required it.

On error we cannot say that there was no proof of some substantial damage. A further assignment of error concerns the striking out of testimony based upon the New Jersey State Geological Survey. One of the defendant's witnesses, Herman Keifer, was recalled for the purpose of making a correction in his testimony given the day before. He stated that in estimating the number of mills which could be run by the creek, he had stated three hundred and fifty, and that such estimate was based upon the flow of the creek as twenty-four million three hundred thousand gallons, according to the New Jersey geological survey. There was then a motion to strike out the testimony because of its basis.

The court thereupon struck out the evidence, because admittedly founded upon facts stated in the reports of the survey, with a reservation of decision as to any future offer that might arise.

The precise point urged for consideration here is that the court erred in striking out the testimony of the witness, although he admittedly founded it upon facts said to have been gained alone from the state geological reports, and hence, by inference, he was not possessed independently of those reports of any knowledge of the facts. In other words, the witness had failed to qualify as to knowledge of the flow of the stream. Now, the reports were not offered, nor were they in court. Their contents only were testified to by the witness, without their production, and therefore the argument made for the relevancy and admissibility of these documents is not pertinent, for that is not the exact question under consideration.

The rule making for the admissibility of such reports, without further proof, is thus laid down in 1 *Greenl. Evid.,* 162 *M.* 16*th edition Wigmore's Rerision:* "An exception which in practice is by far the commonest in its employment, is the exception admitting statements made by officials in pursuance of official duty, * * * avoiding the inconvenience of summoning public officers from their posts to prove the documents and

records in litigation. The guarantee cf trustworthiness justifying the exception is usually said to be the official oath of duty, but a further and additional reason is the publicity of the document, which ensures the probability of the correctness of possible errors by the public who have access to it."

It is also said that there must be an official duty to make the record or entry, which may be provided for by statute or ordinance, or implied from the nature and functions of the office, and the statements must be made on the personal knowledge of the officer, or his subordinate, and this further involves the exemption from the production in court of the original and the presumption of authenticity of official signatures and seals. But it will be perceived that none of the cases referred to by the defendant does away with the production in court of the report, or the copy of the document as published, and its offer in evidence. In all these cases, apparently, the record was offered and admitted. It has not been offered in this case. There was no error in striking out the testimony.

The other assignments of error have been examined, but have been found to be without merit, or disposed of in the consideration herein given to those specially dealt with.

The judgment will be affirmed.