CENTRAL RAILROAD COMPANY OF NEW JERSEY, A COR-
PORATION, PROSECUTOR-APPELLANT, v. THE STATE
TAX DEPARTMENT, J. H. THAYER-MARTIN, STATE
TAX COMMISSIONER; THE STATE BOARD OF TAX
APPEALS, AND JOHN McCUTCHEON, COMPTROLLER
OF THE TREASURY, DEFENDANTS-RESPONDENTS.

Argued May 22, 1933—Decided December 7, 1933.

For the prosecutor-appellant, *Collins & Corbin*.

For the defendants-respondents, *William A. Stevens*, attorney-general.

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment of the Supreme Court, dismissing the writ of *certiorari* to review the tax levied by the state board of taxes and assessment on appellant's main stem, tangible personal property and franchise, more commonly designated as first, third and fourth class property, for the year 1931.

The appellant contends that the tax in question was levied at a rate in excess of the rate provided by law, and, therefore, the tax is excessive; that the tax unlawfully discriminates against appellant and denies it the equal protection of the laws in violation of the fourteenth amendment to the constitution of the United States; that the tax to the extent that it is in excess of the lawful tax, deprives appellant of its property without due process of law, in further violation of the fourteenth amendment to the federal constitution; that the remedy suggested by the Supreme Court to meet the requirements of the equal protection of the laws and the due process of law, is inapplicable, and, in any event is no remedy at all under the decisions of the United States Supreme Court; and that the Supreme Court could and should have either reduced the tax or remitted the matter to the state tax department with instructions to reduce it.

The respondents deny the applicability of these contentions to the instant case. The appellant's objections are the outgrowths of its alleged basic or fundamental grievance, namely, that the "average rate of taxation" was not computed by the use of true values.

The legislative provisions relative to the manner of ascertaining this rate are contained in *Pamph. L.* 1888, *p.* 269, and in chapter 82 of the laws of 1906 (*Comp. Stat., p.* 5279), and also in chapter 4 of the laws of 1922. 2 *Cum. Supp. Comp. Stat.* 1924, *p.* 3547, *pl.* 447d. In substance

said chapter 82 of the laws of 1906, provides that the assessor in every taxing district of the state shall prepare and forward annually to the state board of assessors (now state tax commissioner) a certificate, under oath, showing the true value of all property, real and personal, located in his taxing district other than the property of railroad and canal companies, but including the assessed values of so-called second class railroads and canal property; that the aggregate value of all the property, real and personal, so certified, shall be deemed to be the aggregate value of the general property in the state; that in each taxing district the amount obtained by multiplying the value of all the property in such taxing district by the rate of taxation therein shall be deemed to be the total taxes in said taxing district; that the aggregate of the said total taxes so ascertained, shall be deemed to be the aggregate taxes of the state. The act further provides that the "average rate of taxation" shall be computed and determined by the said board (now state tax commissioner) by dividing the aggregate taxes by the aggregate value of the general property in the state and that the rate so arrived at shall be entered upon the records of the board (now state tax commissioner) and shall constitute the "average rate of taxation" for the year.

Notwithstanding the clear provisions of the law of arriving at the "average rate of taxation" on its property in question, appellant asserted and sought to establish an organized and determined effort of local assessors to assess local property at less than its true value. The practice or the method employed by local assessors throughout the state to bring about this result, it is charged, was to assess all property other than that of the appellant at not more than sixty per cent. of its true value. It is claimed that the property of the appellant was assessed at one hundred per cent. of its true value. The result was that the average tax rate, so computed, amounted to $4.081 per $100 of value. It is further contended that if the average tax rate had been computed according to the true value of all property subject to local taxation throughout the state, as provided by law, the rate would not have been more than $2.093 per $100 of value.

It therefore seems sound in logic and clear in reason that appellant must stand or fall on its ability to sustain by competent and satisfactory proof the basic or fundamental grievance asserted by it. For, if the foundation falls, all reasons based on that foundation must likewise fall.

We therefore pass over all other questions and approach the inquiry, namely, did the appellant, by proper and satisfactory proof, sustain its basic or fundamental grievance? We think not.

Appellant endeavored to fashion its proof to comply with the character of the evidence that seems to appear in the class of cases of which *Louisville and Nashville Railroad Co.* v. *Green et al.,* 244 *U. S.* 522, is typical. But was the testimony in the instant case sufficiently definite, positive or certain in quality or quantity to overcome the presumption of the correctness of the assessments made? We do not think so. In the case of *Estell* v. *Hawkins,* 50 *N. J. L.* 122 (at *p.* 125), it was held:

"* * * the presumption is in favor of the correctness of the estimation made by the assessor, the sworn officer, and before a tax can be disturbed on the ground alleged, the burden is put upon the objector to show by his proofs a clear error in such estimation.

"When the testimony does not decidedly bear against the correctness of the assessor's action, the court cannot disturb it."

In *Michigan Central Railroad Co.* v. *Powers,* 201 *U. S.* 245, Mr. Justice Brewer, speaking for the court, held:

"* * * There is always a possibility of misconduct on the part of officials, but legislation would be seriously hindered if it may not proceed upon the assumption of a proper discharge of their duties by the various officials. And it must be remembered that, in view of the vast multitude of local taxing boards [as stated in one of the briefs of counsel for appellant, there are about one thousand three hundred local assessment districts], the action of any single board could have but little influence upon the railroad rate. Beyond the assumption that these local officers will act from a sense of duty

is the further fact that their action affects directly and principally the special communities for which they act, and that, generally speaking, is a sufficient guaranty * * *."

It would serve no useful purpose to re-analyze the testimony upon which the state board of tax appeals based its judgment. Suffice it to point out that the testimony was fully and most carefully analyzed by the state board of tax appeals. Mr. Weaver, its president, speaking for the board, in part, held:

"Great latitude was allowed appellants in their proofs so that everything might be brought before the board, but a careful reading of the testimony establishes no more or no less than in certain taxing districts there are some under-valuations and in other taxing districts there are some over-valuations. The proofs were general and not specific; they failed to show anything with respect to the great mass of taxable property. The evidence offered only affected small portions or sections of fourteen of the twenty-one counties of the state. Many of appellants' witnesses failed to fix any time when they based their determination of the alleged ratio of assessed value to true value. The time to be established was of October 1st, 1930. The Supreme Court has said: 'Each assessment of property for taxation is a separate entity distinct from the assessment of the previous or subsequent years; assessments are made each year.' *United New Jersey Railroad and Canal Co.* v. *State Board of Taxes and Assessment et al.,* 128 *Atl. Rep.* 427.

"Many of appellants' witnesses failed to show any sales or other bases in the year 1930 for their determination; some few showed sales for the year 1930 ranging in number from seven to twenty-one. The testimony further shows that sales made were mostly of active or desirable property, but the great bulk of property was inactive and this condition was state-wide. Judicial notice must be taken of the fact that the real estate market has been inactive for several years and many properties are now assessed for more than their true value. In fact it is almost impossible to determine what true value now is or has been since 1928. The testimony showed that some portions of the state, like Camden county, were under-valued and others were over-valued."

The character of the testimony offered could not justify a possible finding that there existed an organized and determined effort on the part of local assessors to assess, systematically or intentionally, local property at less than its true value, as asserted by appellant.

The asserted claim of the appellant that its property is assessed at one hundred per cent. of its true value, and that all other property is not so assessed, is unconvincing. It lacks persuasion. The record is barren of any proper or satisfactory evidence which would tend to show that appellant's property was valued at a higher level than that of local assessable property generally. See *Skagit County* v. *Northern Pacific Railway Co.,* 61 *Fed. Rep.* (*N. S.*) 638. We are bound by the record. It cannot be judicially noticed that disparity of valuation exists with respect to the true valuation between classes of taxable property. This fact is a matter of proof like any other fact. *New York State* v. *Barker,* 179 *U. S.* 279.

The partially quoted statement of Mr. Weaver, as presiding officer, namely: "I understand your position here and I can see how your railroads do undoubtedly receive one hundred per cent. assessments" must be read in the light that it was made, *i. e.,* in a continuous colloquy between counsel for appellant and himself throughout the hearing. At all events it surely can have no probative force or value, as evidence, on the question before the board. The return to the writ made by Mr. J. H. Thayer-Martin, state tax commissioner, contained the following statement:

"* * * The state board of taxes and assessments did ascertain and truly value for taxation for the year 1931 the property of the prosecutor, Central Railroad Company of New Jersey, used for railroad purposes as described in subdivisions 1, 2 and 4 of aforesaid act * * *."

This statement is no proof of appellant's asserted claim. Mr. Martin became state tax commissioner on July 1st, 1931. Under chapter 335 of the laws of 1931, which became effective July 1st, 1931, the records, books and papers of the old state board of taxes and assessment were deposited with him, and the sole purpose of having him make a return in this

cause was to obtain the records of the former state board of taxes and assessment, dealing with the tax in question, before the Supreme Court. Mr. Martin had nothing whatsoever to do with the fixing of the tax in question. This tax was levied by the state board of taxes and assessment long before he become an officer of the state. The aforesaid statement on the return was no necessary part thereof. It was clearly a hearsay declaration and extra official. It formed no part of the *res gestæ* of the assessment and has no probative force. See *Sooy* ads. *State,* 39 *N. J. L.* 135 (at *p.* 147); *Story Agency* (*8th ed.*) 161.

The Supreme Court, on application, allowed appellant a rule to take depositions. These depositions have been given analytical consideration. They do not justify a change in the result reached. This proof is subject to many of the frailties of the proof submitted to the state board of tax appeals and in addition is open to objection on other grounds.

Appellant introduced an exhibit, designated as *P-1,* which purported to represent a summary of written reports made to the state board of taxes and assessment containing information pertaining to the considerations shown in deeds conveying realty as recorded in the registers' and clerks' offices of several counties. One of the witnesses called in this connection stated that he prepared this exhibit after examining the reports filed by other employes, but admitted that he had no personal knowledge of the data from which the summary was made. No effort was made to produce the original record. Appellant, however, argues that the summary is admissible under the rule propounded by 2 *Wigmore Ev.* § 1530, dealing with the competency of a memorandum the integrity of which is established by composite testimony. The cautionary remarks of the same author that such evidence is admissible only on the ground of "the impossibility of obtaining the testimony" must not be overlooked. Appellant failed to demonstrate that the records were not available or that the investigators were dead or inavailable. Furthermore, *Exhibit P-1* does not appear to be an examined copy of the reports filed and is subject to the vice of the evidence declared incompetent in *State (West*

*Jersey Traction Co. Pros.*) v. *Board of Public Works of the City of Camden,* 57 *N. J. L.* 313; 30 *Atl. Rep.* 581, and *Stout* v. *Edison Portland Cement Co.,* 82 *N. J. L.* 133; 81 *Atl. Rep.* 737.

Even if *Exhibit P-1* can be considered, the unreliability of its contents to prove true valuation is obvious. Study of the exhibit indicates that the properties described in the deeds reported by the examiners attain a maximum of seven per cent. in but two counties; a minimum of one and seventy-eight-one hundredths per cent. in one county, and an average of four and sixty-eight-one hundredths per cent. of the total assessed value of the real estate for the twenty-one counties. There is nothing to show that the consideration stated in these deeds represents the actual consideration that passed or the true value of the property involved. Quite to the contrary it can be said that it is the common practice not to disclose the true consideration in deeds. See *Seefeld* v. *Chicago, Milwaukee and St. Paul Railway Co.,* 29 *N. W. Rep.* 904, to the effect that:

"* * * On their face the railway company was a stranger to these conveyances, and was not bound by recitals therein of the consideration paid. Such recitals are nothing more than *ex parte* statement of the grantors and grantees that the considerations named were paid and received for the respective lots. As between the parties thereto, each of these conveyances would be evidence of the consideration paid and re-received, because it is an admission of the fact by all the parties to it. But, it is not conclusive evidence. Either party may show that the true consideration was greater or less than that named in the deed, just as a party may always deny, explain or controvert his alleged admissions against his own interest unless they create an estoppel.

"As to a stranger to the deed, however, such evidence is purely hearsay. It is precisely the same in this case as it would have been had the plaintiff [land owner] put a witness on the stand, and for the purpose of proving the value of the lot in question, interrogated him as to the statements and admissions of any grantor or grantee of a lot in the same

vicinity, of the sum paid and accepted therefor. No one will maintain for a moment that such evidence is admissible * * * ."

In *Coulter* v. *L. and N. Railway Co.*, 196 *U. S.* (at *p.* 609), Judge Holmes, in discussing the figures obtained as in the instant case, stated:

"It is obvious that the accidental sales in a given year may be a misleading guide to average sales, apart from the testimony that some at least of the conveyances did not report true prices, yet they furnish the chief weapon of attack * * * ."

It cannot be assumed that the amount contained in a deed represents the actual consideration in a given case or that it represents the fair and true value of the property in question. Experience teaches otherwise. Conveyances, including mortgages, between members of families, trades of properties, purchases made in an artificial market, distress selling and many other elements combine to render such evidence of little, if any, probative force.

Appellant seeks to bind the respondents by excerpts from reports made by legislative commissions insisting that they should be admitted as proof of its contention of general and systematic under-valuation of realty for taxation purposes. The excerpts are based in part on figures contained in the exhibit referred to as *P-1*, and on hearsay statements of others and hence are incompetent. They cannot be held to militate against the state in a proceeding of this character. *Broom Max.* 954: *Mechem's Public Officers* 567. Declarations and admissions of a public officer, not constituting a part of the *res gestæ* or made in respect to a matter over which he has no authority, are not binding upon the public. See, also, 1 *Jones on Evidence* (*2d ed.*) 1757, § 954; *Sooy* ads. *State, supra* (at *p.* 148):

"Indeed the latter class of agents [public officers] have been thought, and with much reason, to be vested with but a slender authority to bind their principals by their statements, except in cases in which the authority has been plainly conferred upon them."

Appellant offered other exhibits and testimony of witnesses

which we have studied with great care. Some of the testimony was fashioned to comply with chapter 229 of the laws of 1931 (*Pamph. L., p.* 577). The fact that the legislature made such testimony competent and admissible does not in itself cure it of its inherent and patent weakness as reliable testimony. Assuming, but not deciding, that the facts and circumstances of the instant case were contemplated by the statute, nevertheless, such testimony becomes competent and admissible, merely, for whatever value, if any, it may have. Nothing more. This statute permits a type of testimony which experience of the ages—with certain well defined exceptions—has rejected. It appears to us that such evidence is still subject to many of the infirmities of hearsay testimony. It is vague, indefinite and unreliable. It opens wide the doors of fraud which might be practiced under its cover. The intrinsic value of such evidence is simply not present. This testimony together with the other offered exhibits falls far short of being definite, positive or reliable. It is subject to many of the criticims stated in relation to the evidence already commented upon. Hearsay evidence, incompetent exhibits and reports are characteristic. The sum total of all the evidence offered does not justify the contention of the appellant that property throughout the state was systematically, or intentionally, undervalued, or that it lacked equality and uniformity, or that the local assessors in making valuation did not act in good faith.

Appellant undertook to prove an organized and determined effort to under-value property other than railroad property, systematically or intentionally. It must establish this undertaking as an adopted practice. *Chicago C. W. Railway* v. *Kendall,* 266 *U. S.* 94; *Sioux City Bridge Co.* v. *Dakota Co.,* 260 *Id* 441; *Southern Railway Co.* v. *Watts, Ibid.* 519.

"* * * Mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is

upon the complaining party." *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 *U. S.* 350.

The mere fact that there may be differences in the judgment of men respecting proper values is not decisive. Such differences do not evince discriminations prejudicial to appellant.

A careful study of the many cases on the subject of the equality and uniformity of taxation leads to the observation so lucidly and effectively expressed by Mr. Justice Miller, speaking for the United States Supreme Court in the state railroad cases, 92 *U. S.* 612, wherein he held:

"* * * Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation is a dream unrealized. It may be admitted that the system which most nearly attains this is the best. But the most complete system which can be devised must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect.

"And when we come to its application to the property of all the citizens, and of those who are not citizens, in all the localities of a large state like Illinois, the application being made by men whose judgment and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature and of the evidence on which human judgment is founded."

Appellant failed to sustain the burden of proof that the "average rate of taxation" was not computed by use of true values.

As already pointed out we have fully considered the proofs submitted to the state board of tax appeals as well as the proofs submitted on the rule to take depositions allowed in this cause. This practice seems to be sanctioned by section 11 of the *Certiorari* act. 1 *Comp. Stat., p.* 405, 406. It has likewise received judicial approval. *Royal Manufacturing Co.* v. *Rahway,* 75 *N. J. L.* 416 (at *pp.* 419, 420). But does not this practice lead to an absurdity? The state board of tax appeals based its judgment on the proof submitted

to it. It could not and of course should not do otherwise. The Supreme Court, and now we, are asked to review the judgment of that tribunal on proofs which were never before it. This is not like a case where a litigant, because of lack of jurisdiction, error, newly discovered evidence, and the like, is given additional opportunity, under the law, to the end of protecting his rights. In the instant case it is simply giving appellant a second opportunity, on additional or different proofs, to establish its claim. All of the evidence adduced under the rule was available to it in the first instance. Appellant, relying on its proof, was unsuccessful. Thereafter it says we want you to consider additional proof, obviously for the purpose of reversing the judgment below. A most unusual procedure! Be that as it may, and notwithstanding the aforesaid authorities, in the view we have taken of this additional testimony, it becomes unnecessary to decide the interesting question—is such testimony admissible?

The Supreme Court did not consider the evidence in the case. The reasoning on which it based its judgment is fully set forth in its opinion reported in 109 *N. J. L.* 395. Without passing upon the question whether the court was right or wrong in so doing, and considering the evidence as presented, we are satisfied that a proper result was reached. *McCarthy* v. *West Hoboken,* 93 *N. J. L.* 247; 107 *Atl. Rep.* 26.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.

*For reversal*—None.