DIVISION OF TAX APPEALS.

PENNSYLVANIA RAILROAD SYSTEM, PETITIONER, v. FRANK E. WALSH, DIRECTOR OF THE DIVISION OF TAXATION, RESPONDENT.

THE CITY OF JERSEY CITY, PETITIONER, v. FRANK E. WALSH, DIRECTOR OF THE DIVISION OF TAXATION AND PENNSYLVANIA RAILROAD SYSTEM, PENNSYLVANIA RAILROAD COMPANY, NEW YORK BAY RAILROAD COMPANY, UNITED NEW JERSEY RAILROAD AND CANAL COMPANY, RESPONDENTS.

THE CITY OF HOBOKEN, PETITIONER, v. FRANK E. WALSH, DIRECTOR OF THE DIVISION OF TAXATION AND PENNSYLVANIA RAILROAD SYSTEM, RESPONDENTS.

Decided April 22, 1947.

For the Pennsylvania Railroad System, *Wall, Haight, Carey & Hartpence (John Hartpence,* of counsel).

For the City of Jersey City, *Charles Rooney (Joseph C. Glavin,* of counsel).

For the City of Hoboken, *John J. Fallon (Frank P. McCarthy,* of counsel).

For the State of New Jersey, *Walter D. Van Riper,* Attorney-General, and *Benjamin C. Van Tine* and *Benjamin Taub,* Deputy Attorneys-General.

CONKLIN, COMMISSIONER. These appeals involve the assessment of the property of the Pennsylvania Railroad System

for the year 1945, which system operates as lessee other railroads that appear herein as respondents; to wit, the Pennsylvania Railroad Company, New York Bay Railroad Company, and United New Jersey Railroad and Canal Company. The Pennsylvania Railroad System filed a complaint seeking a reduction in the assessments made by the Director of Taxation. Complaints were filed by the cities of Jersey City and Hoboken seeking increases in these assessments. Other appeals involving railroads for the year 1945 have been determined by this Division and opinions have been written and filed. The instant complaints involve the same common questions of law and fact as previously determined.

For the reasons set forth in the opinions filed in the cases of *Pitney* v. *Walsh,* 25 *N. J. Mis. R.* 196; 51 *Atl. Rep.* (*2d*) 871; *Delaware, Lackawanna and Western Railroad* v. *Walsh,* 25 *N. J. Mis. R.* 272; 52 *Atl. Rep.* (*2d*) , and *Erie Railroad* v. *Walsh,* 25 *N. J. Mis. R.* 269; 52 *Atl. Rep.* (*2d*) , the appeals of the Pennsylvania Railroad System and the City of Hoboken are hereby dismissed.

Proofs were adduced as to the true value of the railroad property by both the railroad and the municipalities. In most instances the railroad's proof of true value was lower than the assessment made by the Director of Taxation and in all instances the proof of true value by the city's witnesses was greater than the assessment made by the Director. However, as to certain parcels hereinafter described, the railroad offered proof of true value which was less than that placed upon it by the city's experts but substantially larger than the assessment made.

The good faith of the Director of Taxation and the validity of his actions are presumed, and when they are assailed the burden of proof is upon the complaining party. *Central Railroad Company of New Jersey* v. *State Tax Department,* 112 *N. J. L.* 5; 169 *Atl. Rep.* 489. In the case of *New Jersey Bell Telephone Co.* v. *Camden,* 122 *N. J. L.* 270; 4 *Atl. Rep.* (*2d*) 705, 708, the court commented, in referring to this presumption, as follows:

"Just how far that presumption will carry has not been determined in our courts, but in our opinion it will not stand

up against uncontradicted evidence contrary to the presumption."

In all the cases heretofore decided in the 1945 railroad assessments there were proofs as to true value which were offered by the railroads to show that the properties were over-assessed and proofs offered by the municipalities to show that they were under-assessed. In the instant case, however, the proofs submitted by both Jersey City, seeking increases, and the railroad opposing the requested increases, indicate that certain properties were not assessed at true value, but were under-assessed. Common sense and good logic compel us to take cognizance of the fact that the parties in interest concur that the assessment is too low, and therefore the judgment of this Division in regard to the appeal of the City of Jersey City as it applies to property owned by the New York Bay Railroad Company and the United New Jersey Railroad and Canal Company is that the appeal be granted to increase the property to true value as follows:

| Property | Assessment | True Value |
|---|---|---|
| *New York Bay Railroad Co.* | | |
| Sidings outside main stem (in ballast) 488,285 ft. | $686,634 | $900,213 |
| Sidings outside main stem on trestle (11,232 ft.) | 5,707 | 16,669 |
| Greenville sub-station | 70,658 | 73,502 |
| Track scales and office, cap. 150 tons | 5,250 | 7,665 |
| Grain elevator, cap. 200,000 bushels | 75,000 | 85,822 |
| Electric power and lighting plant and fixed machinery, brick 74'x89' | 46,855 | 56,200 |
| Five transfer bridges | 484,175 | 535,524 |
| | | |
| *United New Jersey Railroad and Canal Co.* | | |
| Brick drains at Marion (Shanley's cut) | 8,246 | 11,157 |
| Sidings outside main stem (in ballast) 82,932 ft. | 125,615 | 139,326 |
| Passenger station and shelters, Journal Square | 412,515 | 439,838 |

| Property | Assessment | True Value |
|---|---|---|
| Sub-station, Journal Square ........ | 198,103 | 199,688 |
| Terminal passenger stations, platforms, and umbrella shelters and station enclosure ..................... | 41,000 | 45,999 |

*United New Jersey Railroad and Canal Co.—Harsimus Branch*

| Property | Assessment | True Value |
|---|---|---|
| Sidings outside main stem (in ballast) 162,873 ft. .... ................. | 247,324 | 273,626 |
| Pier "F" and shed thereon 160'x915'.. | 1,003,400 | 1,016,557 |
| Freight transfer bridges No. 4 and No. 3 and fixed machinery ........... | 19,370 | 35,176 |
| Pier "L" and shed thereon 177'x1365' | 245,327 | 403,217 |
| Freight transfer bridges No. 5 and No. 6 and fixed machinery ............ | 29,321 | 55,107 |
| Pier "M" (Coal Dock) ............ | 121,348 | 185,779 |
| Float yard, between Pier "M" and stock yards, 162'x1240' ........... | 339,421 | 423,183 |
| Gantry crane, 5th and Henderson Sts., capacity 25 tons ............. .... | 8,050 | 10,332 |
| Yardmaster's office, brick, Henderson St., 30'x65' .... ... ............ | 16,000 | 16,965 |

In its complaint, the City of Jersey City sought a reclassification of certain railroad property from main stem to second class, but the Division took no proofs on this feature of the case, and therefore this opinion does not deal with the question as it remains upon our calendar to be heard.

Judgments have been entered in accordance with the foregoing conclusions.

WAESCHE, PRESIDENT. (Dissenting.) The valuation assessments here under review were levied for the year 1945 on property in railroad use. These assessments as finally fixed and determined by the Division of Tax Appeals should be at the true value of the property assessed (*N. J. S. A.* 54:29A-7 to 54:29A-17; *Pamph. L.* 1941, *ch.* 291; *Pamph. L.* 1942, *ch.* 337). The property involved in these assess-

ments, which property consists of both land and structures, is located in Jersey City, and is owned and used by railroads operating within the Pennsylvania Railroad System. The 1943 and the 1944 assessments which were levied on the same property were also appealed to the State Board of Tax Appeals. By stipulation, the testimony taken in the appeals from those assessments and also the exhibits are included in the record of the appeals from the 1945 assessments.

The structures in this appeal consist of railroad tracks (rails, ties, ballast, etc.), railroad stations, including shelters and offices, transfer bridges, piers, machinery and other structures and equipment, all of which were especially designed and erected for railroad use. They are not suitable for any other purpose, and they have no market value. They are constituent parts of a railroad.

Jersey City appealed from the assessments on the land and on the structures. The city contends that the assessments are insufficient, i. e., that they are below the true value of the property assessed. The Pennsylvania Railroad appealed only from the assessments on the land. The railroad contends that the assessments on the land are excessive, i. e., that they are above true value. The railroad resists Jersey City's contention that the assessments on the structures are too low. The Attorney-General, on behalf of the state, contends that the assessments are neither too high nor too low, but that they correctly represent the true value of the property assessed. He seeks to maintain the assessments at the amounts levied by the Director of the Division of Taxation.

The Division of Tax Appeals dismissed the railroad's appeal. I disagreed with this action because, in my opinion, some of the assessments on land are excessive. The Division dismissed Jersey City's appeal from the assessments on land and also from the assessments on some of the structures, but it increased the assessments on twenty-one structures. I disagreed with this action because, in my opinion, it was not made to appear that any assessment on structures was insufficient.

The Division of Tax Appeals is required to hear any complaint filed by a taxpayer or a taxing district as to the amount

of any assessment. *"If it shall be made to appear upon such hearing* that any such assessment" is excessive or insufficient, the Division is required to correct and adjust the assessment (*N. J. S. A.* 54:29A–33; *Pamph. L.* 1942, *ch.* 337). To correct or adjust an assessment means to make it conform to the true value of the property assessed, as required by the constitution and the statutes.

Taxation is the taking by government of privately owned property. The Division of Tax Appeals is in the executive branch of the government, the branch whose function is to administer and enforce the tax laws as written and as interpreted by the courts. The legislature created the Division of Tax Appeals to insure strict compliance with the constitutional and statutory requirement that property shall be assessed for taxation by *uniform rules at its true value,* so that the people of our state may be assured of the faithful observance of these principles, and so that their property may be secured from an unlawful taking under the guise of taxation. Therefore, no excuse, no matter how skillfully it may be dressed in legal dialectics, will suffice to acquit this Division of blame for fixing an assessment at either more or less than the true value of the property asssessed if the evidence of its true value is available. We are obligated by law to make all assessments brought to us by appeal conform to the true value of the property assessed—no less, no more. We are permitted to change an assessment only when it is "made to appear" excessive or insufficient. This Division is not a corridor down which a taxpayer may escape from a just assessment and a fair share of the tax burden; neither is it an alley from which to ambush a taxpayer and take a pound of his flesh. Our task is to make sure that assessments are justly levied. Justinian said in the ancient Roman Law, over a thousand years ago.

*"Justice is the constant and enduring will to give to every man his right."*

At the hearing of the 1944 appeal, Jersey City produced as a witness Hugh Phillips, who testified on September 19th, 1944, as to the value of structures. He is a civil engineer, and had some experience in the construction and maintenance

of railroad property. He had no experience in·the operation of a railroad. His testimony in the 1944 appeal is stipulated as a part of the record in this appeal. He valued the structures by estimating the cost to reproduce them new as of the assessing date, and deducting therefrom a percentage of such cost for physical depreciation, which percentage he determined from an inspection of the property. The resulting estimate was, in his opinion, the true value of the structures. He said. that there was no depreciation for obsolescence in any of the structures. Phillips also testified in the 1945 appeals, and valued the structures in the same manner; but, from the estimated cost of reproduction new, he deducted for physical depreciation a larger amount than he had in the 1944 appeal because of the additional year of age and consequent physical change in the structure.

The Pennsylvania Railroad produced James M. Cleminshaw as a witness on the value of structures in the 1944 appeal. He testified on September 20th, 1944, to overcome the testimony given the previous day by Phillips in the 1944 appeal. Cleminshaw is an expert appraiser of land, buildings, fixed machinery, and equipment. He had no experience in designing, erecting, or maintaining structures for railroad use. He had no experience in the operation of a railroad. He estimated the cost to reproduce the structures new as of the assessing date, and then depreciated that figure for physical deterioration and obsolescence. His testimony in the 1944 appeal is stipulated as a part of the record in this appeal, but he did not testify in the 1945 appeal. Moreover, Cleminshaw's estimates to reproduce the structures new given in the 1944 appeal should be considered as a challenge to the accuracy of Phillips' estimates, and not literally taken as the touchstone of true value just because his testimony was offered by the railroad.

The Attorney-General produced Henry L. Fryer as a witness on behalf of the state to testify on the value of structures in the 1944 appeal. He testified on October 6th, 1944, after he had listened to the testimony of both Phillips and Cleminshaw.

Mr. Fryer is a civil engineer. Between 1902 and 1904 he worked for the Baltimore and Ohio Railroad, Pennsylvania Railroad, and Norfolk and Western Railroad on construction and maintenance of railroad structures. From 1904 to the present time he has been employed by the State of New Jersey in the valuation of railroad property for the purposes of taxation. From 1940 to June, 1944, he had charge, under Mr. Focht, of the valuation of all railroad property in New Jersey. He succeeded Mr. Focht upon his death in June, 1944.

Mr. Fryer testified that in his opinion the value of the structures as assessed for the year 1945 by the Director of the Division of Taxation represented their true value. He said that the true or assessed value of the structures was arrived at by the same method that Mr. Focht used to determine true value. The Director of the Division of Taxation also testified that the method Mr. Focht used for determining the true value of property in railroad use was the same method used by him for determining the true value of railroad property for the 1945 assessments.

Mr. Louis Focht was a graduate engineer from Lehigh University. From 1883 to 1897 he was employed in the engineering department of the Lehigh Valley Railroad Company, and during the last ten years of that time he was Division Engineer in charge of construction and maintenance on the New Jersey, Lehigh, and Pottsville Divisions. He designed and constructed almost every type of railroad structure: bridges, round-houses, stations, tunnels, tracks, elevators, &c. In May, 1898, he was employed by the State of New Jersey as engineer in charge of the valuation of all the physical property of the railroads in New Jersey. He continued in that position until the time of his death.

Mr. Focht appeared as a witness on behalf of the state at the hearing of the appeal to the State Board of Tax Appeals from the 1939 assessments on property of the Central Railroad of New Jersey. He testified in that appeal that the method for determining the true value of property in railroad use had not changed since 1884. He said that the true value of a structure was arrived at from a calculation based upon the

*actual cost* to erect the structure new. The railroads, he said, reported to the state the actual cost to erect each structure new. Mr. Focht and a staff of competent assistants checked and studied the plans and specifications for the structure, estimated the cost to erect it, and made a personal and careful inspection of the structure. Thereafter they held a conference with the railroad's tax officers before appraising the structure and assessing it at its true value. From the actual cost to erect the structure new an amount was deducted for physical deterioration and obsolescence. Mr. Focht said that frequently the difference between the actual cost to erect a structure and the estimated cost was from fifteen (15%) per cent. to twenty-five (25%) per cent. and that the bids of experienced contractors to erect a railroad structure varied by as much as two hundred (200%) per cent. He said that it was not only impractical to determine the true value of a structure by estimating each year its reproduction cost new, less physical deterioration and obsolescence, but that it was impossible for his department to value structures by that method because there were over 21,000 railroad structures in New Jersey. Hence, the Director of the Division of Taxation did not, *indeed could not,* determine every year the true value of railroad structures from a wild estimated cost to reproduce them new on the assessing date, especially during the years when our country was at war and both labor and materials were unavailable.

Many of the early statutes of New Jersey incorporating railroads provided for a tax to be imposed upon the railroad, which tax was fixed and determined by the act as a certain percentage of the cost of construction. In 1869 the legislature passed an act providing for "a tax of one-half of one per centum upon the costs of their respective works, including all their property of every description not otherwise taxed." (*Pamph. L.* 1869, *p.* 226.) In 1873 the legislature provided that railroads shall be taxed upon their "cost, equipment, and appendages" at the rate of one-half of one per centum of such cost. (*Pamph. L.* 1873, *p.* 112.) It would therefore seem that the method used by Mr. Focht for nearly fifty years for determining the true value of structures in

railroad use had legislative sanction, and that the method based on estimated reproduction cost new as of the assessing date does not have legislative sanction.

There is a total of thirty-six railroad structures involved in the 1945 assessments here under review. This Division found that the assessments were insufficient on twenty-one of those structures; *i. e.*, that the assessments were below the true value of the structures. The Division affirmed the assessments on the other fifteen structures.

The only evidence of the value of all these thirty-six structures is the testimony of Phillips, Cleminshaw and Fryer. Either the testimony of Phillips, or the testimony of Cleminshaw, or the testimony of both, had to be relied upon by the Division to justify the increases it made in the twenty-one assessments. It therefore follows that the method Phillips and Cleminshaw used (for they used the same method), in arriving at their respective values of those twenty-one structures was approved by the Division, and the method used by the Director of the Division of Taxation was disapproved. Such necessarily had to be the effect of the Division's decision because the method used by Phillips and Cleminshaw and the method used by the Director of the Division of Taxation are entirely different methods and would not produce the same results. One of these two methods is right; the other is wrong. If the method used by the Director of the Division of Taxation was wrong in valuing any of the thirty-six structures here under review, *ipso facto,* it was wrong as to all of them. *Ergo,* all of the thirty-six assessments on structures should have been changed by either increasing them or decreasing them according to the weight that should be given the testimony of Phillips and Cleminshaw. But this was not done. The Division affirmed some of the assessments and disaffirmed others. Such being the case, it thereby necessarily approved the method used by the Director of the Division of Taxation and also approved the method used by Phillips and Cleminshaw, and, at the same time, disapproved both methods. This highly inconsistent position defies all reason. Assessed values fixed in this manner appear out of nowhere as if by magic, like pulling rabbits out of a hat.

The difference is that the rabbits are real while the assessments are mere *pseudo-values*. Moreover, the Division has totally disregarded the constitutional rule of uniformity, which requires that the same method should be used in valuing all these structures. *State, North Ward National Bank v. City of Newark,* 39 *N. J. L.* 380; *Stratton* v. *Collins,* 43 *Id.* 562.

An examination of the increases will show that they lack the supporting evidence and logical reasoning that every assessment should have. As an example, I will analyze the supporting testimony of a few of the values as finally determined by this Division.

The grain elevator at the Greenville Terminal of the Pennsylvania Railroad is twenty years old, having been built in 1926. Prior to 1936 it was assessed locally by the assessor of Jersey City. In 1935 its assessed value was $75,000. The first year it was assessed·as property in railroad use, 1936, it was assessed at $75,000. Each year since 1936 it has been assessed by the State Tax Commissioner at $75,000. Jersey City appealed the 1945 assessment. The railroad did not appeal this assessment. Phillips valued the structure for the tax year 1945 at $85,249.12.· Cleminshaw did not value it for the year 1945, but he valued it for the year 1944 at $89,101. Fryer valued it at $75,000 for the year 1945. The Division of Tax Appeals valued it for the 1945 assessment at $85,822.

Four hundred eighty-eight thousand two hundred eighty-five (488,285) feet of sidings of the New York Bay Railroad Company were assessed for the year 1945 at $686,634. Jersey City appealed the assessment; the railroad did not. Phillips valued these sidings for the year 1945 at $958,884.33. Cleminshaw did not value them for the year 1945, but he did value them for the year 1944 at $934,184. Fryer valued them at $678,856 for the year 1945. The Division valued them for the 1945 assessment at $900,213.

Four gantry cranes were assessed for the year 1945 at $79,892. Jersey City appealed the assessment. Phillips valued the four cranes at $193,388. Cleminshaw did not value them for the year 1945, but for the year 1944 he valued

them at $73,000. Fryer valued them for the year 1945 at $79,892. This Division affirmed the assessment.

The brick office building at Exchange Place was assessed for the year 1945 at $53,000. Jersey City appealed the assessment. Phillips valued the building at $147,009.46. Cleminshaw did not value this structure. Fryer valued it at $53,000. This Division affirmed the assessment.

For the reasons herein given I could not find that the evidence justified any change in the assessments on structures as levied by the Director of the Division of Taxation.