Flanagan v. Plainfield.

STATE, PATRICK J. FLANAGAN, PROSECUTOR, v. TREASURER OF THE CITY OF PLAINFIELD.

1. The provision in the city charter granting to common council the right not only to regulate and prohibit the sale of spirituous liquors, but also to fix the amount of the assessment to be paid for license, and directing that it be paid into the city treasury for the use of the city, confers the taxing power for revenue purposes, and distinguishes this case from *Mühlenbrinck* v. *Commissioners*, 13 *Vroom* 364.

2. The complaint for violating the city ordinance must state to whom the liquor was sold, or allege that it was sold to a person unknown.

3. The city charter provides that on conviction for violating a city ordinance the defendant may be fined, and, if the fine is not paid, be imprisoned for twenty days. There is not error in entering the judgment in the language of the statute. If, after being committed, the defendant pays the fine before the expiration of the twenty days, he may raise, on *habeas corpus*, the question whether he is entitled to be at once discharged from custody.

4. A conviction in the city court of Plainfield is reviewable only by appeal to the Union Common Pleas.

5. The act of 1874, making the exclusive mode of review by *certiorari* to the Union Circuit Court, is unconstitutional. The legislature cannot confer upon the Circuit Courts the power to review the proceedings of inferior tribunals by *certiorari*.

6. The Supreme Court is the sole depositary of the prerogative writs of *certiorari, mandamus* and *quo warranto*. The single exception is in suits originating in justices' courts.

On *certiorari* to remove conviction before city court of Plainfield.

Argued at November Term, 1881, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiff, *Suydam & Jackson.*

For the defendant, *Charles W. Kimball.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The prosecutor was convicted in the city court of Plainfield upon a charge of selling liquor in violation of the city ordinance.   A number of alleged infirmities in the proceedings below are relied upon for reversal.

The first reason assigned is that the ordinance upon which the prosecution is based is void because it imposes a tax for revenue purposes without authority of law.   It fixes the license fee of a saloon at $300, and a hotel license at $200.

The case of *Mühlenbrinck* v. *Commissioners*, 13 *Vroom* 364, upon which the prosecutor relies, does not apply to this case.

The city charter provides that the common council shall have the exclusive right and power to regulate or prohibit the sale of spirituous and fermented liquors within said city, as they may deem most conducive to public good; that the amount of assessment to be paid by the applicant for license shall be fixed by the council, and all moneys which may be derived from granting such licenses shall be paid to the treasurer for the use of the city.   *Pamph. L.* 1872, *p.* 1134, § 30.

The case in 13 *Vroom* was a mere authority to regulate. This legislation shows a clear intent to put the sale of liquor under the absolute control of the city council, and to permit the licensing power to be used as a source of revenue to the city.   *Dill. on Mun. Corp.,* (3d ed.,) § 115; *Chilvers* v. *People*, 11 *Mich.* 43.

In *North Hudson County Railway* v. *Hoboken*, 12 *Vroom* 71, Justice Depue draws the distinction between the power to license as a police regulation and the same power when conferred for revenue purposes.

In this case the taxing power is clearly bestowed in the language of the statute granting to common council the right not only to regulate or prohibit the sale, but also to fix the amount of the assessment to be paid for license, and directing it to be paid into the treasury for the use of the city.

The next reason relates to the sufficiency of the complaint, which fails to state either to whom the liquor was sold, or to allege that it was sold to a person unknown.

This was held to be a fatal infirmity in *Roberson* v. *Lambertville,* 9 *Vroom* 69.

To meet this objection the defendant rests upon section 3 of the supplement of 1874 to the city charter, (*Pamph. L.* 1874, *p.* 303,) which provides:

"That no judgment for the violation of any ordinance shall be reversed for any imperfection, omission, defect in or lack of form, nor for any error except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits."

Section 21 of the city charter, (*Pamph L.* 1872, *p.* 1134,) provides that the city judge shall issue a process against the person charged with violating the city ordinance, stating in such process what ordinance the defendant has violated, and in what manner the same has been violated.

On the return of this process the case is tried without the filing of any complaint. The process is intended to serve the two-fold purpose of bringing the defendant into court and of giving him notice of the specific offence for which he must answer.

Nothing can be more important to the defendant in maintaining his defence than to know the names of the persons to whom the illegal sale is charged to have been made. He will then be enabled to call them to disprove the charge, or, if they are used as witnesses against him, he may be able to show statements theretofore made by them inconsistent with their evidence, or that they are unworthy of credit, or were elsewhere at the time of the alleged sale.

It is the right of the defendant to be informed of the particular charge against him, and if the names of the persons to whom the sale is made cannot, with reasonable diligence, be ascertained, it must be stated that their names are unknown. In the absence of such allegation the presumption will arise that the names are wrongfully withheld. *Greeley* v. *Passaic,* 13 *Vroom* 87.

In this respect the proceedings are fatally defective.

There is also an alleged error in the form of entering judgment.

The court sentenced the defendant to pay a fine of $30, and if said fine was not paid in five days, that he then be imprisoned in the county jail for the term of twenty days. The prosecutor insists that the judgment should have been that in default of paying the fine the defendant be committed and kept in custody for twenty days, unless the fine was paid before that time expired. This section of the charter, taken in connection with other provisions, may be susceptible of the construction that the defendant is to be released when he pays the fine, but if so, there is no error in entering the judgment in the language of the statute. If the defendant, after being committed upon such judgment, pays the fine, he can raise this question on *habeas corpus*.

These questions have been considered by the court because they are of public importance, but the case may be disposed of on another ground which is fundamental.

Is *certiorari* the proper remedy by which to review a conviction in the city court of Plainfield?

Section 21 of the amended city charter of 1872, (*Pamph. L., p.* 1134,) gave an appeal to the Common Pleas in cases where jury trial is allowed. In all other cases the remedy was by *certiorari* to the Supreme Court.

Section 8 of the supplement of 1873, (*Pamph. L., p.* 482,) makes the proceedings in the city court subject to the same laws which apply to the court of small causes, and directs that its judgments in all cases shall be reviewed by appeal in the same manner as in that court. The remedy by appeal thereby became exclusive.

A further supplement was passed in 1874, (*Pamph. L., p.* 302,) which by its second section provides:

"That every conviction had before the city judge, either with or without a jury trial, shall be reviewed by writ of *certiorari*, and not otherwise; such writ to be allowed, heard and determined by the presiding judge of the Circuit Court of Union county."

Thereby the review by *certiorari* out of the Circuit Court of Union county is substituted in all cases for the remedy by appeal to the Common Pleas. If, therefore, the act of 1874 is constitutional, the proceedings of the city court must be certified into the Circuit Court in exclusion of the Supreme Court.

If the act of 1874 is unconstitutional, the conviction is reviewable only by appeal to the Common Pleas, unless the words in the latter part of the recited clause of that act, restricting the writ of *certiorari* to the Circuit Court, can be rejected, and the provision that the review shall be by *certiorari* permitted to stand.

That it is incompetent for the legislature to deprive this court of the use of its prerogative writs to supervise the proceedings of inferior tribunals, is expressly adjudged in a number of cases. *Traphagen* v. *West Hoboken,* 10 *Vroom* 232 ; *Harris* v. *Vandeveer,* 6 *C. E. Green* 424 ; *Green* v. *Jersey City,* 13 *Vroom* 118.

The only question to be considered is whether this rule is substantially encroached upon by the grant of the writ of *certiorari* to the Circuit Court.

The substitution by the act of 1873 of the right of appeal to the Common Pleas in the first instance, in the place of the remedy by *certiorari,* did not impair the jurisdiction of this court, for the judgment of the appellate tribunal is ultimately supervised here on *certiorari.* Such legislation, as is said in Traphagen *v.* West Hoboken, amounts to a mere regulation, and not to an amotion of the remedy by the prerogative writ out of this court.

The law in question has obviously a wider sweep, its effect being to enable the suitor to deprive this court of a portion of its constitutional power.

Article VI., section 5, clause 3, of the state constitution, provides that final judgment in any Circuit Court may be brought by writ of error into the Supreme Court or directly into the Court of Errors and Appeals.

Under the Plainfield law of 1874, when the case on *cer-*

*tiorari* has been finally adjudged in the Circuit Court, that judgment may be taken for review directly to the Court of Errors and Appeals, whereby this court would absolutely lose its control over the inferior tribunal. In like manner this entire branch of its jurisdiction might be wrested from it, and transferred to another forum, by vesting the Circuit in every case with concurrent power to send the writ of *certiorari*.

If by statute the right to the writ of *certiorari* in these cases can be bestowed upon the Circuit Courts, no constitutional barrier opposes the right of the law-maker to arm them with writs of *mandamus* and *quo warranto*.

The distinguishing feature of the King's Bench was the authority which it alone exercised by means of the writs of *certiorari, mandamus* and *quo warranto*.

That our constitution was framed to perpetuate in our Supreme Court the same ample and exclusive power, is clearly shown by the opinion of the Chief Justice in *State, Dufford, pros.*, v. *Decue*, 2 *Vroom* 302.

The Supreme Court is the sole depositary of these prerogative writs.

The single exception to the rule is mentioned by the Chief Justice, viz., suits originating in justices' courts. The reason for the exception is that at the time of the formation of the constitution of 1844, the act constituting the Circuit Courts had conferred upon them the power to review by *certiorari* suits originating in justices' courts.

The constitution makes this court unassailable by legislation.

The logical sequence is that the power to send these writs cannot be distributed and lodged in other courts at the legislative will. No tribunal of co-ordinate jurisdiction can be erected. The right to invest the Circuit Courts with the *certiorari* power necessarily implies the right to confer it upon other inferior jurisdictions. The announcement of the proposition that to the District Courts of the state may be committed the right to issue writs of *mandamus* and *quo warranto*, would create no little surprise. This, it is manifest, would destroy

the due subordination of the several courts, and disturb the harmony of the judicial system, which it is the purpose of the constitution to guard and perpetuate.

The dignity of the Supreme Court will fall far below that of the King's Bench if exclusive power in this respect is withheld from it.

There can be no contraction of the sphere within which the Supreme Court may dispense its prerogative writs except by extinguishing the tribunals to which they may be sent. A law is equally without authority whether it in express terms, or by its operation and effect, takes away or diminishes the inherent power of the court.

A legislative scheme giving to the Circuit Courts the use of any of these writs cannot be effectuated without violating fundamental principles.

This result, however, does not lead to the conclusion that the legislature may not commit to a justice of the Supreme Court the duty of examining assessments for improvements made by commissioners, or proceedings to sell lands for taxes, with authority to direct the necessary amendments, for in these instances the proceedings must be reviewed by *certiorari* out of this court to the parties making the assessments or instituting the proceedings for tax sales after they have been perfected.

In my judgment, the act of 1874 is without sanction unless it can be stripped of the clause in which its infirmity lies.

The rule to determine whether the unlawful superaddition can be rejected, and the other portion of the section permitted to take effect, is clearly stated in *Rader* v. *Township of Union*, 10 *Vroom* 514.

The Chief Justice there says:

"This can always be done when the objectionable feature stands by itself, and is separable as a distinct thing from the body of the act, and there is no reason to suppose that the portion thus eliminated constituted an essential motive to the enactment of the law."

The application of this test must lead to the rejection of

Flanagan v. Plainfield.

the entire provision with regard to the change of remedy. The legislative declaration is that every conviction had before the city judge shall be reviewable by *certiorari* and not otherwise, to be issued out of and heard in the Circuit Court.

To ascribe to the legislature the intention of conferring upon the Supreme Court the right of review, when it in clear language restricts that right to the Circuit Court, would be unauthorized.

The terms in which the power is granted to the latter court repels the idea that it was intended to be bestowed upon the former.

The purpose of the legislature is expressed ; nothing is left to inference. If the section under advisement is dismembered, and part of it obliterated by judicial construction, the law as enforced will be in direct conflict with the law which came from the hands of the law-giver. If the validity of the latter could be maintained, the reverse of the former would be the law. The conclusion seems to be irresistible, that the rejection of one portion of this legislation would, in effect, be a declaration by the court that that shall be the law which the legislature has said shall not be the law.

The case of *Howe* v. *Plainfield*, 8 *Vroom* 145, was reviewed by *certiorari* to the city court, but the writ was issued prior to the passage of the act of 1874, and the question as to the propriety of the remedy was not started. There can be no doubt that if the attention of the court had been called to the eighth section of the act of 1873, the prosecutor would have been remitted to his remedy by appeal to the Common Pleas.

The provision in the act of 1874 being void and inoperative by reason of its unconstitutionality, the remedy by appeal to the Common Pleas is unimpaired and exclusive. The writ of *certiorari* will not lie except where there is a total want of jurisdiction in the city court. It was improvidently granted in this case, and should be dismissed.