THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL., PROSECUTORS, v. J. H. THAYER-MARTIN, · STATE TAX COMMISSIONER, ET AL., RESPONDENTS.

PENNSYLVANIA RAILROAD COMPANY ET AL., PROSECU- TORS, v. BOARD OF TAX APPEALS ET AL., RESPOND- ENTS.

Argued June 28, 1934—Decided December 11, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutors Central Railroad Company of New Jersey et al., *Maximilian J. Stallman* and *Robert J. Bain* (*Alexander H. Elder,* of counsel).

For the prosecutors Pennsylvania Railroad Company et al., *Wall, Haight, Carey & Hartpence.*

For the respondents, *David T. Wilentz,* attorney-general (*Duane E. Minard* and *John Solan,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The writs in these cases, numbers 218 and 236, May term, 1934, embrace all of the railroad companies in our state except the New York and Long Branch Railroad Company.

In case number 218, there are forty-eight separate writs of *certiorari* and they embrace all of the companies except those constituting the Pennsylvania Railroad system.

In case number 236, there are sixteen separate writs of *certiorari* and they embrace the various companies constituting the Pennsylvania Railroad system.

The subject-matter of all the writs involve the assessments and taxes for the year 1933, upon first and second class property; tangible and personal property; and remaining property, including the franchise. These assessments and taxes are as follows:

| | Assessment | Taxes |
|---|---|---|
| Central Railroad Company of New Jersey | $102,351,077 | $3,841,726 |
| Lehigh Valley Railroad | 45,694,813 | 1,714,301 |
| Delaware, Lackawanna and Western Railroad | 85,386,862 | 3,304,074 |
| Erie Railroad | 50,136,198 | 1,880,872 |
| New York, Susquehanna and Western Railroad | 9,147,081 | 339,239 |
| New York Central Railroad | 30,010,862 | 1,183,235 |

| | | |
|---|---:|---:|
| Reading Company . . . . | 24,369,691 | 540,098 |
| Raritan River Railroad . . . . | 1,007,789 | 40,829 |
| Lehigh and Hudson River Railroad . . . . . . . . . . . . . . . . . | 2,144,429 | 85,048 |
| (With whom are associated sixteen prosecutors connected with the Pennsylvania system (No. 236) . . . . . . . . . . . . . . . . . | 133,518,341 | 5,063,325 |

The prosecutors in case number 218 assign nine reasons in support of their contention in the premises, namely, that the assessments and taxes levied upon their property are excessive, erroneous, unlawful and unconstitutional. Epitomized, these claims, as pointed out in the opinion of the state board of tax appeals, are reduced to three distinct issues, namely:

(1) The method by which the assessments were made is illegal;

(2) Regardless of the method of assessment, the franchises and railroad property have been assessed in excess of true value; and

(3) That the great mass of real estate taxable under the General Tax act is assessed at less than true value, and that properties of railroad companies, being assessed at true value, are thereby discriminated against.

Prosecutors, in case number 218, in their oral argument, as well as on their briefs, further reduce the issues to two questions: "First, with respect to the ascertainment of the true value of property used for railroad purposes; and, second, with respect to the equality of the assessments levied on railroad property and other property."

Prosecutors, in case number 236, including the Reading group (four writs), the Lehigh and Hudson River Railway Company (one writ), and the Raritan River Railroad Company (one writ), although they assigned six reasons in support of their contention that the assessments and taxes levied upon their properties are also excessive, erroneous, unlawful and unconstitutional, disclaim any attack upon the method

employed in the making of the assessments; offered no proof thereon; and limited their attack to that of illegal discrimination. It was stipulated that all testimony and proofs, by both sides, should apply to the companies in case number 236, solely on the question of discrimination.

After twenty full court days, held between September 19th and November 3d, 1933, the board, on December 15th, 1933, reached the following conclusions:

(a) It unanimously sustained the method employed in the making of the assessment.

(b) It decided, by a vote of three to two, that there was no illegal discrimination. On this point, however, let it be marked, the president of the board, Mr. Weaver, said:

"I dissent from the majority opinion that there is no illegal discrimination. I believe that there is conclusive evidence of under-valuation of the real property assessed under the General Tax act, as of October 1st, 1932, in all taxing districts of the state, with few exceptions, where proof was offered."

"Following *Soper et al.* v. *Conly et al.,* 108 *N. J. Eq.* 370; 154 *Atl. Rep.* 852, while my knowledge is not evidence, nor can I take judicial notice of those facts within my knowledge, yet that knowledge enables me to discriminate and properly value the divergence of testimony between the experts. This knowledge enables me to differentiate the testimony of the experts and properly qualifies me to determine which of the testimony has greater value."

"However, *I am unable from the testimony offered to satisfactorily conclude the average amount of under-valuation throughout the entire state, nor can I in the same way determine the average amount of under-valuation in the several taxing districts of the state where the railroads hold second class property.* Mr. Compton shares in these views." (Italics ours.)

(c) It sustained the valuation as to first, second and third class property.

(d) It sustained the franchise valuation.

*As to the method.* The assessments in the instant cases

were made pursuant to *Pamph. L.* 1888, *p.* 269, as further supplemented and amended. Section 3 of the Railroad Tax act, in its present state, requires the true value of all property used for railroad purposes, including franchises, be made under the following four classifications: (1) The main stem, and structures thereon; (2) the lands outside the main stem, with the structures thereon; (3) the tangible personal property (rolling stock, machinery, &c.); and (4) the remaining property, including the franchises.

The proof is clear that the provisions of the statute have been observed. Mr. Louis Focht, a civil engineer since 1884, has been identified with the branch of the state department in charge of the detail work incident to the making of the assessments since 1898; he is the chief engineer of the division of railroad valuation and taxes; he was formerly employed by the Lehigh Valley Railroad Company of New Jersey for about sixteen years as a division engineer; and he has walked every foot of railroad in this state. He was called and testified as a witness for the prosecutors and respondents. He said that the method employed in the making of the instant assessments, and herein complained of, is the method that has been employed in this state since 1884. This is the first time that an attack has been centered and directed against it.

The problem of railroad taxation is not unlike all other problems of taxation; it is a troublesome one. This is so in normal times; and it is especially so during these present economic disturbances and the period of extraordinary transportation problems through which railroads are now passing. The contest between the taxing authorities of the state and the prosecutors has been a continuous one; the end thereof is not made to appear.

Thus, notwithstanding that this contest has been waging for almost fifty years; and that almost every possible phase of this litigious question has been brought to our courts (it is estimated that it has been so brought in excess of one hundred times) and received their consideration, it is not at all surprising that the prosecutors should, at this late stage

of the contest, challenge the method employed and so firmly established in the making of these assessments.

In support of this attack, prosecutors strongly argue that the excision of the word "separately" from section 3 of the act of 1888, as it appeared in the act of 1884, and other changes in the fourth subdivision thereof, is a clear indication, heretofore "generally overlooked," on the part of the legislature, "to correct the irrational direction to separate a railroad into classes for the purpose of valuation." And, it is argued that the effect of the act as amended in 1888, "is to require the whole railroad to be valued as a whole and as a railroad, and the proportionate value of [the] four general elements then ascertained for the purpose of distributing the tax."

The legislative mandate as to the distribution of taxes levied on second class property (*Pamph. L.* 1918, *pp.* 1078, 1081, and its supplements and amendments thereto) is a very persuasive factor in support of the method or procedure followed. And, it would seem to us that it is far from a satisfactory answer thereto to say that if and when the taxes levied, on the method proposed, and hereinafter referred to, by prosecutors, are paid there can be a division of those taxes on some arbitrary percentage basis, to meet and comply with the legislative provisions as to its distribution.

We are of the opinion that the cases cited by prosecutors do not support their basic contention. Rather are we of the opinion that the cases of *Central Railroad Company of New Jersey* v. *The State Board of Assessors,* 49 *N. J. L.* 1; *Central Railroad Company of New Jersey* v. *State Board of Assessors,* 75 *Id.* 771; *Long Dock Co.* v. *State Board of Assessors,* 78 *Id.* 45; *affirmed,* 79 *Id.* 604, fortify and justify the respondents in the course which they adopted and followed in the premises.

The state board of tax appeals held:

"The statute does not prescribe any specific method for determining true value. It is obvious, however, that it contemplates a physical valuation of each class of railroad property. The method of determining true value is left to the discretion and judgment of the state tax commissioner.

"The true value of railroad property is not determined solely by cost of acquisition of land, by cost of improvements and personal property, less depreciation, or reproduction cost less depreciation, but is based upon a consideration of many elements, such as the statutory returns made by railroad companies showing the cost and true value of their property as determined by them, a personal examination and investigation of the property, consideration of its physical conditions, usability and location and its proximity to large cities for transportation of freight and passengers and to industrial manufacturing and mining centers, pleasure resorts and ocean and river termini. In valuing structures and tangible personal property, additional elements are frequently considered, namely: cost, or reproduction cost, less depreciation, obsolescence and other elements not reflected in the physical value. All these elements are considered in connection with the railroad as a going concern."

For the respondents it is strongly urged in substance, that the methods followed and the factors considered, as indicated, is basically, traditionally and legally sound; they are productive of the "true value" of the prosecutors' properties. This, we think, is so.

Prosecutors concede that they "have not found in the reported cases any reference to a statute which requires the value of a railroad to be ascertained in any specific manner." Ergo, they argue, in effect, that the determination of true value (article 4, section 7, paragraph 12, of our constitution as amended in 1875) of a railroad should be determined by the market value of its stock and bonds representing their property, or by their earnings, or by a combination of both, over a period of years. (Stock and bond and earning method.)

Respondents, in answer to those methods, say, in effect, that they are now proposed not because they are the proper and sound methods or indices of determining the "true value" of the prosecutors' properties, but, rather, if they are now used they would produce lower assessments and resultant lower taxes. In other words that the proposed methods

would be particularly beneficial to the prosecutors if used at this time. The insistment of the prosecutors, irrespective of its merits or demerits, is a natural one; and the answer of the respondents thereto, true or untrue in fact, is a logical one; but neither the contention of the prosecutors nor the answer of the respondents, as stated, is determinative of the real issue—were the properties assessed at their "true value" for taxation purposes?

On the suggested methods of the prosecutors we find a field rich with divergent thought. Experts, text writers and court decisions, state and federal, are not in accord. For a most exhaustive discussion of the evidential factors for determining the true value of railroad property for taxation purposes, the cases of *Northern Pacific Railway Co.* v. *Adams Co.*, 1 *Fed. Supp.* 163 (at *pp.* 172, 173; *Heiner* v. *Crosby*, 24 *Fed. Rep.* (*2d*) 191, 193; *Pleasant* v. *M-K-T-R Co.*, 66 *Id.* 842 (at *p.* 847), are typical and illustrative. They demonstrate the utter lack of uniformity; and in the absence of statutory regulations to the contrary, conclusively indicate that there is just as much said against them as there is said for them. In our own state the stock and bond method as considered in assessments on franchise tax received judicial recognition in *New Jersey Junction Railroad Co.* v. *Hendrickson*, 84 *N. J. L.* 413. It was so considered in the instant case. But in *Newark* v. *Tunis*, 81 *Id.* 45; *affirmed*, 82 *Id.* 461, our Court of Errors and Appeals held that the exchangeable value, under ordinary and normal conditions, in the market of bank stock for taxation purposes, is a workable rule and not an invariable test of value under any and all circumstances. The reasons underlying these wide diversity of thought finds, perhaps, perfect expression in *State Board of Assessors* v. *Central Railroad Co.*, 48 *Id.* 146; 4 *Atl. Rep.* 578 (at *p.* 586):

"* * * It may be added that no system of taxation can be devised which will be free from criticism on the ground that in some way or other it works unequally or lacks complete uniformity. Said the court, in State Railroad Tax cases: 'Perfect equality and uniformity of perfect taxation,

as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. It may be admitted that the system which most nearly attains this is the best. But the most complete system which can be devised must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect.' "

And (at *p.* 628), 4 *Atl. Rep.:*

"The objection that the property of railroads by this law is not assessed by taxes according to its true value, because it can only be truly valued as an entirety, and not in parcels, as provided for in the act, is not well taken. The method of determining the true value of property must be left to the discretion of the legislature. If this value is fixed as the basis for taxation, the method and agencies to be used to ascertain it, belong to the legislative, and not the judicial, province."

Thus, as indicated, in the absence of statutory enactment to the contrary, it is nothing new to say, as it has been frequently said before, that valuing railroad property for taxation is not a formulaic process. In the recent case involving "actual value" decided by the Supreme Court of the United States, on November 5th, 1934 (*Rowley* v. *Chicago and Northwestern Railroad Co.,* 79 *L. Ed.* (1 *Advance Opinions*), 18, *headnote* 2, *p.* 22, it was held:

"The ascertainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rate. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and properly may be taken into account to guide judgment in determining what is the money equivalent—the actual value—of the property." (And cases therein cited.)

Thus it is obvious that there is no one and only yardstick of measurement that is used under all circumstances. It may well be that it would be much more satisfactory to all concerned, and surely much easier, if (1) railroad companies maintained one value on their property for all purposes; but this is not being done. Railroads, it is common knowledge,

place one value on their property on their statement of assets and liabilities; another for rate making purposes and still another for taxation purposes, &c., and apparently properly so under the law; or (2) if the legislature, the only proper tribunal for such a purpose, would indicate the factors to be considered in determining the true value of railroad property for taxation purposes.

The board, as stated in its opinion, clearly set forth the method employed and the various factors which it considered in reaching its conclusions. If we are at all concerned with the method or formulas so employed, as long as the sum it declared be due is based on the true value of prosecutors' properties (*Central Railroad Co.* v. *State Board of Assessors,* 49 *N. J. L.* 1—at *p.* 8), we are of the opinion that the methods employed and the factors considered by the board were fairly inclusive; they were sound, fair and reasonable. It appears to us that they truly form, under the proofs herein submitted, a practical, sound, fair and legal basis for the result reached. The practical construction given to the law by the board for nearly half a century on which it reached its conclusions is strong evidence that it is right. It has become the firmly rooted, established and fixed law applicable thereto. It cannot, under these circumstances, be changed by or through the judicial branch of our government. The relief, if any, prosecutors are entitled to have in the premises, must come, if at all, by or through the legislative branch of our government. This we think is the well settled law.

In *Wright* v. *Central of Georgia Railroad Co.,* 236 *U. S.* 678; 59 *L. Ed.* 784, Mr. Justice Holmes said:

"To decide whether those taxes are such an unjustified exaction we must turn to the legislation of the state, bearing in mind that the practical construction given to the law for nearly half a century is strong evidence that the plaintiff's contention is right."

In *Wisconsin* v. *Illinois,* 278 *U. S.* 367, 413; 73 *L. Ed.* 430, 433, Chief Justice Taft, speaking of the interpretation to be given to a section of an act, said:

"This construction of section 10 is sustained by the uniform practice of the war department for nearly thirty years.

Nothing is more convincing in interpretation of a doubtful or ambiguous statute. *United States* v. *Minnesota,* 270 *U. S.* 181, 205; 70 *L. Ed.* 539, 548; 46 *Sup. Ct. Rep.* 298; *Swendig* v. *Washington Water Power Co.,* 265 *U. S.* 322, 331; 68 *L. Ed.* 1036, 1040; 44 *Sup. Ct. Rep.* 496; *Kern River Co.* v. *United States,* 257 *U. S.* 147, 154; 66 *L. Ed.* 175, 179; 42 *Sup. Ct. Rep.* 60; *United States* v. *Burlington and M. River Railroad Co.,* 98 *U. S.* 334, 341; 25 *L. Ed.* 198, 200; *United States* v. *Hammers,* 221 *U. S.* 220, 228; 55 *L. Ed.* 710, 715; 31 *Sup. Ct. Rep.* 593; *Logan* v. *Davis,* 233 *U. S.* 613, 627; 58 *L. Ed.* 1121, 1128; 34 *Sup. Ct. Rep.* 685."

In *United States* v. *Dakota Mountain Oil Co.,* 288 *U. S.* 459; 79 *L. Ed.* 898, Mr. Justice Stone, in speaking of a construction given to a revenue act, said (at *p.* 466):

"The administrative construction must be deemed to have received legislative approval by the re-enactment of the statutory provisions, without material change. No. 80, *Murphy Oil Co.* v. *Burnet* (decided December 5th, 1932), 287 *U. S.* 299, *ante* 318; 53 *S. Ct.* 161; *Brewster* v. *Gage,* 280 *U. S.* 327, 337; 74 *L. Ed.* 456, 463; 50 *S. Ct.* 115."

In *Massachusetts Mutual Life Insurance Co.* v. *United States of America,* 288 *U. S.* 269; 79 *L. Ed.* 742, Mr. Justice Roberts said:

"The congress in the Revenue acts of 1928 and 1932 re-enacted section 245 without alteration. This action was taken with knowledge of the construction placed upon the section by the official charged with its administration. If the legislative body had considered the treasury interpretation erroneous it would have amended the section. Its failure so to do requires the conclusion that the regulation was not inconsistent with the intent of the statute. (*National Lead Co.* v. *United States,* 252 *U. S.* 140, 146; 64 *L. Ed.* 496, 499; 40 *S. Ct.* 437; *Poe* v. *Seaborn,* 282 *U. S.* 101, 116; 75 *L. Ed.* 239, 245; 51 *S. Ct.* 58; *McCaughn* v. *Hershey Chocolate Co.,* 283 *U. S.* 488, 492; 75 *L. Ed.* 1183, 1186; 51 *S. Ct.* 510; *Costanzo* v. *Tillinghast,* 287 *U. S.* 341, *ante* 350; 53 *S. Ct.* 152), unless, perhaps, the language of the act is unambiguous and the regulation clearly inconsistent

with it. Compare *Louisville and N. Railroad Co.* v. *United States,* 282 *U. S.* 740, 757, 758; 75 *L. Ed.* 672, 683, 684; 51 *S. Ct.* 297."

In the case of *Wright* v. *Central Georgia Railroad Co., supra* (at *p.* 681), Mr. Justice Holmes said, "the court can not take the place of the taxing power."

In our state, Chief Justice Gummere, for the Court of Errors and Appeals, in the case of *Public Service Railway Co.* v. *Matteucci,* 105 *N. J. L.* 114, 116, said:

"* * * Assuming that this is so [contention that the statement quoted was *obiter*] the soundness of the principle stated therein by the chief justice has never been questioned by any later decision, either of the Supreme Court or of this court; and, having stood unchallenged for more than half a century, it should not now be overthrown by judicial decision. *Graves* v. *State,* 45 *Id.* 203, 208."

The second point is, "the assessments are illegal and unconstitutional because they are made at the full and excessive valuations of the property as computed by the state board, while the great mass of other property throughout the state is systematically and intentionally assessed for taxation at less than true value."

Prosecutors, on this point, offered proofs of the general character offered by them in their tax case for the year 1931. They had more expert real estate witnesses in the instant case as to the assessments of property in the various counties in the state; they produced additional exhibits illustrative of the many points urged by them in support of their contentions; they had the benefit of the added legislation, chapter 305, *Pamph. L.* 1933, *p.* 819 (consideration as to whether there had been illegal discrimination in the assessments).

The respondents, on the other hand, also had expert real estate witnesses tending to disprove the existence of illegal discrimination in the assessments of property, in the various counties of the state; they also offered an exhibit showing individual tax appeal to the county on the ground of alleged over-assessments. It is as follows:

| *1929* | *1930* | *1931* | *1932* |
|--------|--------|--------|--------|
| 13,081 | 16,814 | 20,875 | 34,704 |

Respondents point out that out of this total of eighty-five thousand four hundred and seventy-four appeals the assessment was sustained in thirty-eight thousand three hundred and forty-eight cases, and reduced as excessive in forty-five thousand two hundred and twenty-five cases. During the same period the appeals for over-assessment decided by the state board of tax appeals in 1931 and 1932 aggregated ten thousand eight hundred and eighty-two. Of those, the assessment was sustained in one thousand four hundred and ninety-seven cases, and reduced as excessive in nine thousand three hundred and eighty-five cases. During the year 1933, the board received ten thousand eight hundred and nine appeals alleging over-assessment. These cases aggregate ninety-four thousand four hundred and fifty-five instances where the assessments of the local assessors have been judicially determined by duly constituted authorities to be either correct or excessive.

The figures, it is urged by respondents, indicate that if there is under assessment in places, it is not the result of any manifest intention, established system, persistence, consistent plan, or proven design, on the part of the various local assessors. It has probative force and value.

In so far as the proofs in the instant case correspond to the proofs in the case involving the assessment and taxes levied against the prosecutors, the decision of the Court of Errors and Appeals in *Central Railroad Company of New Jersey* v. *The State Tax Department et al.,* 112 *N. J. L.* 5; 169 *Atl. Rep.* 489 (*certiorari* denied October 8th, 1934, No. 108, Supreme Court of United States), is controlling and dispositive of the instant case. As to the other admissible proofs introduced in the instant case, *i. e.,* proofs not appearing in the case cited—it is sufficient to say, that notwithstanding the vote of three to two by the board on this point, the judgment of the majority that it was not sustained is fully and adequately supported by the proofs. The cited case, 112 *N. J. L.* 5, *supra,* is also controlling and dispositive of all other like question raised and argued in the instant case.

The writs of *certiorari* in cases Nos. 218 and 236, are dismissed, with costs.