**LEHIGH VALLEY R. CO. OF NEW JER-
SEY et al. v. MARTIN, Tax Com'r,
and eight other cases.\***

Nos. 6431–6439.

Circuit Court of Appeals, Third Circuit.

Nov. 15, 1938.

\*Writ of certiorari denied 59 S.Ct. 592, 83 L.Ed. ——.

Thomas Raeburn White, of Philadelphia, Pa., Maximilian M. Stallman, of Newark, N. J., Robert J. Bain, of Jersey City, N. J., and Alexander H. Elder, of New York City, for appellants.

David T. Wilentz, Atty. Gen., of N. J., and Duane E. Minard, Sp. Asst. Atty. Gen., for appellees.

Before BUFFINGTON, THOMPSON and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

The appeal numbered upon our docket as 6431 is that of the Lehigh Valley Railroad Company of New Jersey, a corporation of New Jersey, Lehigh Valley Harbor Terminal Railway Company, a Corporation of New Jersey, and Lehigh Valley Railroad Company, a corporation of Pennsylvania, lessee, v. J. H. Thayer Martin, State Tax Commissioner of New Jersey, Frank J. Murray, Comptroller of the State of New Jersey, William H. Albright, Treasurer of the State of New Jersey, and David T. Wilentz, Attorney General of New Jersey. The appeal numbered 6432 upon our docket is that of the Central Railroad Company of New Jersey, a corporation of New Jersey, v. the officers of the State of New Jersey just named. These appeals concern sums assessed and taxed by the State of New Jersey for the year 1932 upon the properties of the appellants within the State of New Jersey.

Seven other appeals are also presented for determination. In No. 6433 upon our docket the appellant is Central Railroad Company of New Jersey, a corporation of New Jersey. In No. 6434 the appellant is Delaware, Lackawanna & Western Railroad Company, a corporation of Pennsylvania. In No. 6435 the appellant is New York Central Railroad Company, a corporation of New York. In No. 6436 the appellant is New Jersey & New York Railroad Company, a corporation of New Jersey. In No. 6437 the appellant is New York, Susquehanna & Western Railroad Company, a corporation of New Jersey and Pennsylvania. In No. 6438 the appellant is Erie Railroad Company, a corporation of New York. In No. 6439 the appellant is Lehigh Valley Railroad Company, a corporation of Pennsylvania. In all of these appeals the appellees are identical with those named in Nos. 6431 and 6432. The seven appeals concern sums assessed and taxed by the State of New Jersey for the year 1933 upon the properties of the appellants within the State of New Jersey.

As to the Merits of the Controversy.

Setting aside procedural questions, the gist of the controversies lies in the method and manner of assessment employed by the taxing authorities of New Jersey. The parties have stipulated that the 1932 cases shall be determined on the record made upon the 1933 assessments at the hearing before the State Board of Tax Appeals and reviewed by the Supreme Court of New Jersey in Central R. R. Co. v. Thayer-Martin, 114 N.J.L. 69, 175 A. 637, it being further stipulated, however, that the court below should determine all questions of admissibility and competency of the testimony taken in the proceedings before the State Board of Tax Appeals.

The statutes of New Jersey providing for the assessing and taxation of railroad property (P.L. 1888, p. 269, and the various supplements and amendments thereto, which will be referred to hereafter as the Railroad Tax Act, R.S.N.J.1937, 54:19-1 et seq.) provide that the taxing authorities of New Jersey shall ascertain the "true value" of the properties of each railroad company within the State, and in making such ascertainment, shall also ascertain "I. The length and value of the main stem of each railroad * * * II. The value of the other real estate used for railroad * * * purposes * * * III. The value of all the tangible property of each railroad * * * and IV. The value of the remaining property, including the franchise." R.S.N.J.1937, 54:22-1. The Railroad Tax Act was itself passed pursuant to the authority of Article 4, Section 7, par. 12, of the Constitution of the State of New Jersey, which requires all property subject to taxation within the State to be assessed "* * * for taxes under general laws, and by uniform rules, according to its true value."

Referring specifically to the method of assessment employed in the cases at bar, the case for New Jersey rests principally

upon the testimony of Focht, Chief Engineer of the Division of Railroad Valuations and Taxes of the New Jersey Tax Department. This witness testified that he was a civil engineer of over thirty years continuous employment and experience in assessing railroad properties and that he had walked over every foot of railroad in the State. He stated that valuations of railroad properties in the State of New Jersey, and of the appellants' properties in particular, were arrived at under the four enumerated classifications as follows. The "yardstick" used in ascertaining the value of the main stem properties of each railroad was the value of adjacent property. Buildings and structures on the main stems and other lines were valued at cost of reproduction, less depreciation, and the tangible personal property of the appellants, including rolling stock, received similar valuation. As to the valuation of franchises, the witness testified in respect to the valuation of the franchise of the Central Railroad Company of New Jersey that the sum of $800,000 represented "* * * our idea of the value of the right to do business in the State and covering that section of the railroad. * * * It is an appraisal, a personal appraisal of the value of that class of property. In a way, it has a definite relation to the market value of the stock and bond or the net earnings. * * * Those elements were considered in arriving at or in formulating our judgment with respect to that amount. * * * We couldn't apply the stock and bond method on franchise rigorously to the value which we put down there. We considered the net income method. We didn't use it, but we considered it. We considered the stock and bond method. We didn't use the stock and bond method in order to arrive at the value and didn't use the net earnings method to arrive at the value, but we considered it."

It further appears from Focht's testimony that the "bare-bones" method of valuation (see Southern R. R. Co. v. Kentucky, 274 U.S. 76, pages 81 and 82, 47 S. Ct. 542, 71 L.Ed. 934) was not followed strictly even in respect to the physical assets of the appellants. The witness testified that "The basis of fact for the assessment is what we consider the taxable value of the property. The railroads make returns annually, of capital stocks and bonds, par value, on a blank which we furnish for each company, also of earnings

and expenses, the last being for the year ended December 31, 1931, reported according to the Interstate Commerce Commission classification of accounts. The form calls for the amounts applicable to New Jersey. * * * The statement also calls for mileage of the system in and out of New Jersey. The next item on the statement calls for the statements of lands and structures owned outside the state of New Jersey as to cost and valuation * * *".

The witness testified that he examined all principal items himself. He testified:

"For instance, for a dock in the harbor we get the plans and make an estimate of our own just as a contractor would make it, and after we get it done we determine what in our opinion is a fair taxable value of the property. We do not use the cost as the valuation for tax purposes; we apply a certain factor to it, depending on the circumstances.

"Cost includes a lot of elements, such as conducting transportation during construction, and we take those elements into consideration. We have to depend on our judgment for the taxable value and have been doing that for thirty-five years."

He further testified: "In going over the railroads, I have noticed plenty of idle equipment, freight and locomotives, some of them will never be put in use on the road again. On this account we have had to depart from our rigid scale of depreciation to allow for that condition of lack of use." He also stated: "In valuing structures on railroad property we have to consider the parts of the whole and that has been the practice and they have been valued accordingly. For taxation purposes, I make no difference between such structures in railroad use and in industrial use."

None the less it is not an exaggeration to say that physical valuations constitute the assessments, valuation of franchises aside, as contended by the appellants, and it is obvious that many items which could properly be considered in estimating valuations for tax assessments have not been considered by the taxing authorities at all. System values have been disregarded except to the very slight degree indicated in arriving at the valuations of franchises. Capitalized average income and capital charges have not been considered. Revenue ton miles, passenger and freight miles, both as to the entire systems and as to trackage in New Jersey,

have been disregarded. Little emphasis has been placed upon the functional values of the appellants' properties. The record now before us convinces us that the method of assessment employed by the State of New Jersey for railroad properties may be justly criticized and might well be subject to revision.

None the less the methods of assessment and valuation employed in the case at bar have received the sanction of the Courts of New Jersey and are now firmly embodied in its laws. Central R. R. Co. v. Thayer-Martin, 114 N.J.L. 69, 175 A. 637; Central R. R. Co. v. State Tax Department, 112 N.J.L. 5, 169 A. 489; State Board v. Central R. R. Co., 48 N.J.L. 146, 4 A. 578. Central R. R. Co. v. State Board, 49 N.J.L. 1, 7 A. 306.

█ No single technique or method has ever been adopted for valuation of railroad properties by taxing authorities and a wide variety of methods has been employed. The Supreme Court of the United States has frowned upon a strictly mathematical method of appraisal. See Rowley v. Chicago & Northwestern R. R. Co., 293 U. S. 102, 109, 55 S.Ct. 55, 58, 79 L.Ed. 222. It was stated in this case: "Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and properly may be taken into account to guide judgment in determining what is the money equivalent—the actual value—of the property." In Great Northern Ry. Co. v. Weeks, 297 U.S. 135, 139, 56 S.Ct. 426, 80 L.Ed. 532, the Supreme Court made it plain that in determining assessments a taxing board is not bound by any formula, rule or method but is free to consider all pertinent facts and give them reasonable weight. In the cited case Mr. Justice Butler said [page 428]: "Courts decline to disturb assessments for taxation unless shown clearly to transgress reasonable limits. Overvaluation is not of itself sufficient to warrant injunction against any part of the taxes based on the challenged assessment; mere error of judgment is not enough; there must be something that in legal effect is the equivalent of intention or fraudulent purpose to overvalue the property and so to set at naught fundamental principles that safeguard the taxpayer's rights and property."

█ It is the law that an erroneous or arbitrary method of assessment whereby pertinent facts are omitted from consideration by the taxing authorities resulting in overvaluation of a taxpayer's property constitutes an abridgement of the rights of the taxpayer under the Fourteenth Amendment, U.S.C.A.Const. Amend. 14. See Chicago, B. & Q. R. Co. v. Babcock, 204 U.S. 585, 596, 27 S.Ct. 326, 51 L.Ed. 636; Louisville & N. R. Co. v. Greene, 244 U.S. 522, 536, 37 S.Ct. 683, 61 L.Ed. 1291, Ann. Cas.1917E, 97; Chicago & N. W. Ry. Co. v. Eveland, 8 Cir., 13 F.2d 442. The method of assessment may be so erroneous as in itself to indicate that the taxpayer is being deprived of property in a manner repugnant to the law. In West v. Chesapeake & Potomac Telephone Co., 295 U. S. 662, 55 S.Ct. 894, 79 L.Ed. 1640, the Supreme Court in passing upon a determination of valuation by the Public Service Commission of Maryland for rate-setting purposes, designated the method of assessment as "inapt and improper", and set aside the rates arrived at by the Commission as repugnant to due process. In this case Mr. Justice Roberts stated [page 899]: "It is apparent from what has been said that here the entire method of the commission was erroneous and its use necessarily involved unjust and inaccurate results." In Great Northern Ry. Co. v. Weeks, supra, at page 149, 56 S.Ct. at page 433, it was held that when in assessing railroad property a taxing board failed to take into account and give due weight " * * * to the sudden, progressive, and enormous declines of value" in railroad properties as a result of the depression, it was the equivalent in law of an intention to make a grossly excessive assessment and constituted a breach of the taxpayer's rights under the Fourteenth Amendment and the Commerce Clause, U. S.C.A.Const. Amend. 14; art. 1, § 8.

█ Can it be said with justice that the method of assessment pursued by the taxing authorities of New Jersey in the cases at bar proceeded upon erroneous principles to such an extent that the appellants were deprived of their rights under the Fourteenth Amendment or an unreasonable burden was placed on interstate commerce? As we have stated, the method of assessment employed was based primarily upon the value of assets within the State of New Jersey and had little regard for system values. The valuation of main stem properties was arrived at upon the valuation of properties adjacent to the rights of

way.. In that respect the method of assessment employed might well be deemed to have been erroneous, but we think it must be admitted that physical valuations of tangible property used as part of railroad systems, such as locomotives, signal towers, bridges, and terminal equipment, made as in the case at bar, bear a substantial relationship to their true or actual value in the operation of railroad systems. As indicated heretofore by the repetition of the testimony of Focht, some consideration was given by the taxing authorities to the practical value of the equipment of the appellants. It must also be borne in mind that the terminal properties of the appellants within New Jersey are unusually extensive due to the facilities for shipping afforded by tidewater. We think that it would be generally conceded that the values of terminal properties upon tidewater do bear a relationship in value to other properties similarly situated, though not used by railroads. In valuations of the franchises, the taxing authorities considered many of the elements which properly would go to ascertaining the value of a right to carry on a railroad business in New Jersey. Considering all the elements presented by the evidence, we cannot conclude that the methods of assessment employed by the taxing authorities were so erroneous as in themselves to constitute a burden upon interstate commerce or a violation of the appellants' rights under the Fourteenth Amendment within the principle enunciated by the Supreme Court.

██ The appellants, if we correctly apprehend their position, contend that methods of assessment employed were not such as were reasonably intended to ascertain the actual or market value of the properties. As we have indicated, we cannot agree with this contention. Physical valuations do in fact furnish one basis for tax assessment clearly recognized by the law. Though there are other methods which may be deemed to be preferable, it must be borne in mind that taxation is a legislative matter in the first instance and a matter of administration in the second. Unless the methods of assessment employed are erroneous to a degree constituting confiscation of property, they should not be disturbed by the courts. As was stated by the learned trial judge, "The federal court cannot and ought not sit in judgment of the taxing authorities, and cer-

tainly not the courts of the State of New Jersey. The court's power is rightly limited to a determination of whether the taxes assessed by the State of New Jersey violate the principles of due process as guaranteed by the Constitution."

██ Moreover, in our opinion, an examination of the voluminous record fails to show that if the strict formulaic method contended for by the appellants were applied to the valuation of the properties that assessments much lower in amount than those at bar would be arrived at. We think that the record fails to disclose excessive valuation of the properties of the appellants. Great diminution of railroad income, particularly in the years 1930 and 1931, is demonstrated, but railroads are not built to be operated for brief periods of time. But assuming the existence of overvaluation in the cases at bar, overvaluation is not in itself sufficient to justify judicial interference. Great Northern R. R. Co. v. Weeks, supra. The courts may not interfere with the collection of rates established under legislative sanction unless their enforcement is the equivalent of taking property without compensation. San Diego Land Co. v. National City, 174 U. S. 739, 754, 19 S.Ct. 804, 43 L.Ed. 1154. It is necessary that the appellants show that the assessments were fraudulently made or were so wrong in principle as to constitute a taking of property without due process. The assessments must be such as to constitute not an exercise of the taxing power, but to be in reality confiscation. Sunday Lake Iron Co. v. Wakefield Tp., 247 U.S. 350, 353, 38 S.Ct. 495, 62 L.Ed. 1154; Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 78 L.Ed. 1109. In our opinion the appellants have failed to make such a showing.

██ In consideration of the merits of the cases one further point remains for discussion. The appellants allege discriminatory assessments, contending that their properties have been deliberately and intentionally assessed at a rate in excess of 100 per cent. of true value while property generally in the State of New Jersey has been assessed at a much lower percentage of true value, namely 30 per cent. to 60 per cent. That such discriminatory assessments may be prohibited by the federal courts is settled beyond question. Southern R. R. Co. v. Watts, 260 U.S. 519, 526, 43 S.Ct. 192, 67 L.Ed. 375; Chicago, B. &

Q. R. Co. v. Babcock, supra; Raymond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78, 12 Ann.Cas. 757; Louisville & N. R. Co. v. Greene, supra; Sunday Lake Iron Co. v. Wakefield Tp., supra. May such discriminatory assessments be deemed to be proven in the cases at bar? The learned District Judge concluded that the proof upon this issue was insufficient. He stated in his opinion in Nos. 6431 and 6432: "At the best, it (the testimony submitted) only permits suspicions on which the court has no right to comment and certainly not to rely."

The suspicion referred to is that the State of New Jersey seeks to maintain itself by taxing the appellants more and its other inhabitants less. In our opinion there is no sufficient evidence in the record from which such a conclusion might be drawn. There is evidence of confusion in taxation throughout the State of New Jersey, of many properties assessed at less than true value and many assessed at more than true value if the number of successful appeals prosecuted furnishes a criterion, but there is failure upon the part of the appellants to show deliberate and intentional discrimination in assessing their properties at 100 per cent. of true value or more while generally assessing other properties in the State at a lesser rate. Moreover, the findings of the trial judge should not be lightly disturbed by the reviewing court. Youngblood v. Magnolia Petroleum Co., 10 Cir., 35 F.2d 578; Williams v. Foster, 62 App.D.C. 14, 63 F.2d 893; Exchange National Bank v. Meikle, 9 Cir., 61 F.2d 176. This rule should be applicable even where the testimony has not been presented orally.

In connection with the question of overvaluation of the railroad properties and undervaluation of property generally, the appellants complain that the learned District Judge held that a substantial portion of the testimony could not be treated as evidence. His opinion shows that whatever may have been his conclusion as to the admissibility of such testimony under the strict rules of evidence none the less he considered it. His conclusions upon the issue do not differ greatly from our own and for this reason we must sustain the holding of the trial court upon this point.

As to Procedural Questions.

The appellees contend that the causes at bar are not cognizable in equity because the appellants have an adequate remedy at law, no irreparable injury being shown. This contention may be disposed of by stating that the averments of the bills of complaint allege continuing fraudulent assessments in derogation of the constitutional rights of the appellants. This in itself is sufficient to afford grounds for equitable jurisdiction. Johnson v. Wells Fargo & Co., 239 U.S. 234, 244, 36 S.Ct. 62, 60 L.Ed. 243. See, also, Cummings v. Merchants' National Bank, 101 U.S. 153, 157, 158, 25 L.Ed. 903; Fargo v. Hart, 193 U.S. 490, 24 S.Ct. 498, 48 L.Ed. 761.

In cases Nos. 6433 to 6439, inclusive, the District Court held that Section 265 of the Judicial Code, R.S. § 720, Act of March 3, 1911, 36 Stat. 1162, 28 U.S.C.A. § 379, operated to deprive it of jurisdiction and therefore these causes were not considered by the court below upon the merits. As was stated by Judge Woolley in Dorrance v. Martin, D.C., 12 F.Supp. 746, at page 749, the theory underlying federal jurisdiction in such cases as those at bar is that the administrative proceedings of the State must be completed before an aggrieved taxpayer may call upon a federal court for relief. If upon the other hand, the taxpayer has invoked a judicial determination of the questions involved by the courts of a State, Section 265 operates as a limitation upon equitable power which serves to prevent the issuing of an injunction by a court of the United States, Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293.

In respect to the 1932 taxes, under consideration in cases Nos. 6431 and 6432, no review was had by certiorari to the Supreme Court of New Jersey. In respect to the 1933 taxes, under consideration in cases Nos. 6433 to 6439, review was had by certiorari to the Supreme Court of New Jersey, which resulted in the decision of Central R. R. Co. v. Thayer-Martin, reported in 114 N.J.L. 69, 175 A. 637. A change in the taxing statutes took place between the assessments of the 1932 taxes and the assessments of the 1933 taxes. The statute in effect at the time of the assessment of the 1932 taxes, namely Section 13 of the Act of March 27, 1888,[1]

---

[1] The pertinent portions of the statute referred to are: " * * * if it shall be made to appear that any assessment is unlawful, excessive or insufficient, the court shall correct the same by whomsoever such writ shall be prosecuted,

made available to the taxpayer by certiorari a judicial review by the Supreme Court of New Jersey of the assessment complained of. Dufford v. Decue, 31 N.J.L. 302; Traphagen v. Township of West Hoboken, 39 N.J.L. 232; Flanagan v. Treasurer of Plainfield, 44 N.J.L. 118; Mayor, etc., of Jersey City v. Lembeck, 31 N.J.Eq. 255; In re Roebling's Estate, 91 N.J.Eq. 72, 108 A. 359. But in our opinion the statute in effect at the time of the assessment of the 1933 taxes, viz, the Act heretofore referred to as changed by the amendment of June 26, 1933, Acts of 1933, Chapter 305, p. 819, 821, R.S.N.J.1937, 54:26-7 to 13[2] also makes available to the taxpayer a judicial review by the Supreme Court of New Jersey of the assessments made by the taxing authorities. As stated by the learned trial judge, the case of Hill v. Martin, supra, pages 398-400, 56 S.Ct. 278, disposes of the issue.

In delivering the opinion of the Supreme Court of the United States in the case just cited, Mr. Justice Brandeis made plain that the Supreme Court of New Jersey is a tribunal created by the constitution and that its power to review proceedings of inferior tribunals is an inheritance from the Court of Kings Bench; that under the New Jersey Certiorari Act of 1903, as amended, R.S.N.J.1937, 2:81-1 et seq., 2:189-8 to 10, 54:5-45, the Supreme Court of New Jersey possesses the power to determine disputed questions of fact as well as law and when inquiring into the facts is not limited to the evidence introduced before the lower tribunal. The Supreme Court of New Jersey may cause depositions to be taken in order to procure additional evidence or may proceed otherwise as it sees fit and in tax matters "may reverse or affirm, in whole or in part, such tax or assessment" [page 281]. Mr. Justice Brandeis then states, "The power to 'reverse or affirm, in whole or in part' does not imply that the court may exercise administrative discretion. Such power is a common incident of the judicial review of

taxation." The powers of judicial determination thus ascribed to the Supreme Court of New Jersey have been within its prerogative before and after the 1933 amendment.

In the 1933 cases the Board of Tax Appeals made a final determination of the issues presented to it as provided by the statute. The fact that the amendment of 1933, Section 13, provides for correction of the assessment by the Supreme Court if illegal discrimination is demonstrated cannot of itself serve to turn a judicial review into an administrative one, the Supreme Court of New Jersey having been entitled theretofore to decide disputed questions of fact as well as law. We therefore concur in the ruling of the court below in cases Nos. 6433 to 6439, inclusive, to the effect that the review afforded to the appellants by the Supreme Court of New Jersey was judicial in its nature and that therefore the provisions of Section 265 of the Judicial Code, 28 U.S.C.A. § 379, operated to limit the power of the court below.

Whether or not the right purported to be given to correct illegal discrimination by the 1933 amendment existed in the Supreme Court of New Jersey prior thereto, as contended by the appellees, citing the decision of the Court of Errors and Appeals in Central R. R. Co. v. State Tax Department, 112 N.J.L. 5, 169 A. 489, is immaterial. As we have stated, the review afforded to the taxpayer by the Supreme Court of New Jersey by certiorari was a judicial review prior to the amendment, and after the passage of the amendment the review by certiorari remained a judicial review. The appellants having selected the State tribunal as the forum in which to review their complaints by judicial determination must remain in that forum and cannot now seek to begin their suits in the federal tribunals. As a matter of fact in the channel of judicial determination originally selected by the appellants, the judgment of the Supreme Court

and reduce or increase it, as may be just, or refer it back to the board of assessors, who shall correct or re-assess the same, in accordance with the instructions of the court * * * ". P.L.N.J. 1888, p. 278.

[2] The pertinent portions of the statute referred to are: "If it shall be made to appear before the Supreme Court on the writ of certiorari that the final determination of the state board of tax appeals in respect to any such assessment or tax in controversy is illegal, excessive, insufficient, or that there has been illegal discrimination in the assessment, the court shall correct, adjust and equalize such assessment and tax or refer same back to the state tax commissioner who shall correct, adjust and equalize the assessment and tax in accordance with the instructions or decision of the court." R.S.N.J.1937, 54:26-12.

in Central R. R. Co. v. Thayer-Martin was reviewable upon certiorari by the Court of Errors and Appeals and, if certiorari were granted, then by the Supreme Court of the United States.

The appellees also assert that every question presented by the nine appeals is res adjudicata by reason of the decision of the Supreme Court reported as Central R. R. Co. v. Thayer-Martin, supra. There is in fact an identity of parties, issues and subject matter presented by the suits at bar and Central R. R. Co. v. Thayer-Martin, supra. The records in these cases are identical in all pertinent respects. Examination of the reported decision in Central R. R. Co. v. Thayer-Martin, shows that questions concerning both the method of assessment and alleged discrimination in making the assessments were raised and adjudicated by the Supreme Court of New Jersey. While it is true that the provisions of the Fourteenth Amendment and the Commerce Clause were not specifically adverted to, none the less all constitutional questions raised in the court below could have been raised and rights thereunder asserted in the proceedings in the Supreme Court of New Jersey. Therefore, whether asserted or not, such questions are res adjudicata now. Fidelity National Bank v. Swope, 274 U.S. 123, 130, 131, 47 S.Ct. 511, 71 L.Ed. 959; American Surety Co. v. Baldwin, 287 U.S. 156, 167, 53 S.Ct. 98, 77 L.Ed. 231, 86 A. L.R. 298; Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972. It is also settled that in tax cases the doctrine of res adjudicata concludes parties to a subsequent proceeding upon all questions determined by an earlier decision. Tait v. Western Maryland Railroad Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Nachod Co. v. Helvering, 6 Cir., 74 F.2d 164; Henderson v. United States Radiator Corporation, 10 Cir., 78 F.2d 674.

There can be no question but that the courts of a state are competent to hear and determine questions arising under the Constitution and laws of the United States. Detroit, etc., Ry. Co. v. Michigan Railroad Commission, 235 U.S. 402, 35 S.Ct. 126, 59 L.Ed. 288; State Corporation Commission v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500; Dorrance v. Martin, D.C., 12 F.Supp. 746.

In our opinion the questions presented by the nine suits at bar are res adjudicata and this defense as asserted by the appellees is valid.

For the reasons given the decrees of the court below are affirmed.

*Writ of certiorari denied 59 S.Ct. 589, 83 L.Ed. ——.